ALFRED R. FISH, Appellant, *v.* THE ESTATE OF ELIZABETH M. McCARTHY, INCORPORATED, Respondent.

Fourth Department, June 29, 1928.

*L. Earl Higbee*, for the appellant.

*F. W. Baker*, for the respondent.

SEARS, J.   Plaintiff was hurt by the collapse of an outside stair-way in the rear of a tenement block owned by the defendant while he was attempting with others to move a piano up the stairs.   The tenement block was a brick structure, four stories in height.   The lowest floor was occupied by merchants.   The three upper floors consisted of apartments.   There were fourteen apartments on each floor, seven facing the front, and seven the rear.   On each floor there was a wide hallway running parallel with the front and rear of the building, and between the sets of apartments facing front and rear.   At about the middle of each floor there was a short, narrow hallway running from the wide hall to the rear of the building.   There was an interior stairway.   This stairway was six or seven feet wide from the ground floor to the second floor; but above that was about five feet wide, and between the second and third floors it was constructed with two turns.   There were also two turns in it as it led from the third to the fourth floor.   The

turns would not have prevented taking the piano up that way. On the back of the building there were porches about ten feet wide with balustrades on the outside. These porches were one above the other, and ran the full width of the back of the building. There was no roof over the porch on the fourth floor. There was a series of flights of stairs from the ground to the fourth floor. These stairs were on the outer side of the porches just inside the balustrade. The stairs were also one above the other. These stairs were about four and one-half feet wide, and between the different floors consisted of two flights of eight or nine steps each, with a platform between. This whole exterior structure of porches and stairs was of wood.

A tenant who lived in an apartment on the fourth floor, on the street side, ordered a firm of piano dealers to move a piano from a different building to her apartment in the defendant's block. The plaintiff, an experienced piano mover, was employed for this occasion by the firm of piano dealers. With three other men he got the piano and brought it on a truck to the defendant's property. He entered the premises by the front door and went up the interior stairway to the top floor where he located the apartment of the tenant to which the piano was to be brought. He passed out to the back porch on the top floor and descended the exterior wooden stairway. These stairs appreared to him to be firm. The truck was driven around to the back of the building. The piano was unloaded onto the ground and the usual lifting or moving appliance attached to it. The men then proceeded to take the piano up the back stairs. They reached the third floor in safety, but when about midway between the third and fourth floors, and as they describe it, " bending the piano on to the platform there," the platform and stairs gave away, and the plaintiff fell with the piano and received injuries. The piano weighed about 700 or 800 pounds, and the total weight of piano and men was in the neighborhood of 1,400 pounds. An examination after the accident showed that the uprights which supported the platform and stairs between the third and fourth floors were rotted; that what are called " headers " were nailed to the uprights and the joists were nailed to the headers; that the nails fastening the headers to the uprights were in places in the uprights where the wood was rotted and many of the nails themselves were so rusted as to crumble in the fingers, and that this caused the platform and stairs to fall. As the upper porch was not covered, the upper stairway, which collapsed, was even more exposed to the weather than in the case of the lower flights. The back stairs had been reconstructed about twelve years before the accident. The owner caused an inspection by a

carpenter and builder annually after such reconstruction. The structure had been painted about a year before. The last inspection was less than two months previous to the accident. This inspection was made by a contractor of twenty-five years' experience, engaged by the defendant for that purpose. At that time he put in some new treads in the stairs, and went over the whole porch, tapping with a hammer pieces which he suspected of being rotten, and sticking a knife in whenever a board looked as if it might be rotten. His examination disclosed nothing decayed or unsound. These back stairs were used by all the tenants as a means of access to their tenements. Furniture was moved up and down these stairs. There was no central heating in the building, and heating and cooking stoves and coal were moved up and down the stairs. Some of the men engaged in moving this piano had previously moved pianos up these stairs, and at least twice on previous occasions within four years these stairs had been used for that purpose.

The plaintiff coming on the premises for a legitimate purpose connected with a tenant was an invited person to whom the landlord owed the duty of exercising reasonable care in keeping the stairway in repair and condition suitable for use. (*Loucks* v. *Dolan*, 211 N. Y. 237; *Jameson* v. *Keystone Warehouse Co.*, 210 App. Div. 212.) Defendant claims to have fulfilled this duty. It contends that the stairs were safe for reasonable use and that they failed only when put to extraordinary and unusual strain, to one not reasonably to be expected; also that its full duty was performed by the inspection by an independent contractor within a short time previous to the accident.

These positions presented questions for the jury. It cannot be said as matter of law that a piano is so unusual an object for a tenant in such a building that its installation in one of the tenements by means of this stairway was not within the limits of what might reasonably be expected. Other tenants in the block had brought pianos to their rooms previously. According to the plaintiff's evidence no warning of danger in moving this piano up the stairs was received by the plaintiff or his fellow-workers. Under the proof it was for the jury to determine whether the stairs were safe for use reasonably to be anticipated and whether the use to which they were put was such a use.

The defendant did not exempt itself from liability as matter of law by employing an independent contractor to make an inspection. Its negligence, if any, as stated before, consists in a failure to use reasonable care to keep the premises safe for use. The duty of making repairs or removing defects was not absolute, but only arose after notice, actual or constructive, of dangerous condition.

(*Altz* v. *Leiberson*, 233 N. Y. 16; *Employers' Liability Assur. Corp., Ltd.,* v. *Wagner,* 220 App. Div. 123; *Hirsch* v. *Radt,* 228 N. Y. 100.) The condition of rot in the supporting uprights was such as to make it a question for the jury as to whether dangerous defects had existed for sufficient time to give constructive notice to the owner; in other words, for such time that a reasonably careful landlord would have discovered them and had opportunity to correct them. The inspection made by the independent contractor may have a bearing on the character and condition of the structure. It does not, however, preclude a finding of constructive notice to the owner. The jury might hold the inspection superficial and careless. If so, it would be of little importance.

The plaintiff's own conduct also presents a question for the jury. The construction itself was not such as to portend disaster as matter of law. Nevertheless, the object moved was heavy, and whether the plaintiff was careless in attempting to use these stairs when other means were open of getting the piano to the tenant's apartment, is a question of fact.

The judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and a new trial granted, with costs to appellant to abide the event.