[718 NYS2d 456]

JOHN WALTON, Individually and as Parent and Guardian of RALISHA WALTON, an Infant, et al., Appellants, v ALBANY COMMUNITY DEVELOPMENT AGENCY, Defendant, and WEST HILL IMPROVEMENT CORPORATION et al., Respondents.

Third Department, January 11, 2001

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz,* Albany (*Mo Athari* of counsel), for appellants.

*Thuillez, Ford, Gold & Johnson,* Albany (*Donald P. Ford, Jr.,* of counsel), for Peter J. Farrell, respondent.

*D'Agostino, Krackeler, Baynes & Maguire,* Menands (*Arete Sprio* of counsel), for County of Albany, respondent.

*Carter, Conboy, Case, Blackmore, Maloney & Laird, P. C.,* Albany (*Andrew G. Ceresia* of counsel), for West Hill Improvement Corporation, respondent.

*Bouck, Holloway, Kiernan & Casey,* Albany (*Mark D. Sanza* of counsel), for Anthony Smith, respondent.

*Hodgson, Russ, Andrew, Woods & Goodyear,* Albany (*Theresa J. Puleo* of counsel), for Savitrie Boodwha and another, respondents.

## OPINION OF THE COURT

Rose, J.

This consolidated action was commenced on behalf of three children, Ralisha, Mercedes and Larissa, seeking damages for injuries sustained as a result of their ingestion of lead-based paint during their residence in apartments owned or maintained by defendants from 1991 to 1993. Supreme Court granted defendants' motions for summary judgment dismissing the action solely on the ground that plaintiffs failed to establish a causal connection between the children's injuries and exposure to lead. Plaintiffs now appeal. Asserting that lead poisoning itself is an actionable injury, plaintiffs argue that Supreme Court improperly dismissed the action because the expert medical affidavits submitted in support of defendants' motions failed to make a prima facie showing that, as a matter of law, there is no causal connection between the children's exposure to lead paint and their claimed injuries. We agree.

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence

of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324). Also, "[t]he evidence produced by the movant must be viewed in the light most favorable to the nonmovant, affording the nonmovant every favorable inference" (*Horth v Mansur*, 243 AD2d 1041, 1042). "Only after the movant has made this prima facie showing does the burden shift to the party opposing the motion to produce evidence showing the existence of material issues of fact which would require a trial [citations omitted]" (*id.*, at 1042).

As to claims for a child's exposure to lead, the Court of Appeals has held that prima facie causation is established by evidence that the child's residence contained a hazardous level of lead-based paint and that the child was observed ingesting paint fragments, had elevated lead levels,[1] was not out of the parent's custody for any substantial period of time and did not manifest the pertinent symptoms before moving into the residence (*see, Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 648). Here, plaintiffs allege and defendants do not dispute that the children had elevated lead levels in their blood measured by tests administered in 1993 and 1994,[2] that they received medical treatment for those elevated levels, that lead-based paint was present in their residences at the relevant times, that they were observed ingesting particles of such paint, that they resided continuously at those residences and that they became ill while living in those residences. Thus, the threshold issue on this appeal is whether the proof in support of defendants' motions was sufficient to shift the burden to plaintiffs to present more than this prima facie evidence of causation.

Defendants supported their motions with the affidavits of Phillip Riback, a physician specializing in pediatric neurology, and Robert McCaffrey, a neuropsychologist. Basing their opinions upon, *inter alia*, their examinations of each infant in 1999, a review of the depositions, and detailed histories from the custodians and biological mother, these experts opined that the children's existing conditions were primarily related to factors other than their exposure to lead.

However, after review of these opinions in the light most favorable to plaintiffs, we conclude that defendants did not

---

1. "Elevated lead levels" is defined in Public Health Law § 1370 (6) as "a blood lead level greater than or equal to ten micrograms of lead per deciliter [mg/dl] of whole blood or such blood lead level as may be established by the department pursuant to rule or regulation" (*see*, 10 NYCRR 67-1.1 [d]).

2. Blood test results indicated that at various times in 1993, Ralisha had levels of 35 mg/dl, Larissa had levels of 32 mg/dl and Mercedes had levels of 63 mg/dl.

meet their initial burden of demonstrating the absence of any issues of fact regarding the causal connections between the children's injuries and their ingestion of lead. First, we note that defendants' experts examined the children in 1999, several years after their exposure to lead, and offer no opinion as to whether the various conditions alleged in plaintiffs' bill of particulars may have been present prior to those examinations and may have been caused by exposure to lead. Thus, defendants' experts do not exclude the possibility of earlier injuries caused by lead. Second, defendants' experts address only the possible causal connections between the neuropsychological conditions they actually observed and the children's exposure to lead. They do not affirmatively exclude causal connections between lead exposure and the other health conditions alleged in the bill of particulars, such as lead poisoning and neurological damage. Third, to the extent that they found or could not rule out certain neuropsychological or developmental impairments, the opinions of defendants' experts minimized, but did not exclude, the causal role of the children's exposure to lead. For example, as to Ralisha, they diagnosed significant motor and cognitive impairments, and developmental delays. Riback opined that "[w]ith a reasonable degree of medical certainty, it is evident that the toxic effects of lead upon Ralisha are inconsequential in comparison with etiologies of her developmental impairments." McCaffrey opined that "the developmental delays as to Ralisha * * * are more likely than not caused by her Fetal Alcohol Syndrome and not by lead." However, McCaffrey also stated that it is impossible to differentiate the effects of Fetal Alcohol Syndrome from those of lead exposure at a later date. Their opinions as to the other two children are similarly inconclusive.

As there is no dispute that the levels of lead measured in the children's blood in 1993 and 1994 are recognized as elevated, unhealthy and requiring remedial medical treatment,[3] such as the chelation and provocation inpatient therapies undergone

---

**3.** The Centers for Disease Control and Prevention have stated that "[b]lood lead levels (BLLs) as low as 10 mg/dl are associated with harmful effects on children's ability to learn" (Centers for Disease Control and Prevention, Screening Young Children for Lead Poisoning: Guidance for State and Local Public Health Officials, at 13, Nov. 1997, published on the Internet at <http://www.courts.state.ny.us/reporter/webdocs/leadguide97.pdf>). The Department of Health has recognized that such levels are of concern by mandating the reporting of all blood-lead tests at or above 10 mg/dl (*see*, 10 NYCRR 67-3.3; *see also*, statement of legislative findings and purposes, L 1970, ch 338, § 1 [Public Health Law § 1370 *et seq.*]).

by the children, we cannot agree that the foregoing expert evidence excludes the injuries alleged in plaintiffs' pleadings. Nor does the opinion that exposure to lead was an inconsequential factor, or that another cause was more likely than not, preclude such exposure from being found, as a matter of fact, to be one of the proximate causes of the children's neuropsychological conditions (*see, Stewart v New York City Health & Hosps. Corp.,* 207 AD2d 703, 704, *lv denied* 85 NY2d 809). Although relevant on the issue of damages, the expert evidence presented by defendants fails to eliminate questions of fact as to whether the children sustained causally related injuries and their motions must be denied in these circumstances. This holding makes it unnecessary to review Supreme Court's denial of plaintiffs' motion to renew. However, since Supreme Court did not address the other grounds for dismissal raised in defendants' motion papers, the matter must be remitted for further consideration.

CREW III, J. P., SPAIN, MUGGLIN and LAHTINEN, JJ., concur.

Ordered that the order entered January 13, 2000 is reversed, on the law, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Ordered that the appeal from the order entered February 28, 2000 is dismissed, as academic.