[745 NYS2d 97]

SHANE L. WYNN, an Infant, by ADRIANA E. WYNN, His Mother, et al., Appellants, v T.R.I.P. REDEVELOPMENT ASSOCIATES et al., Respondents. (And a Third-Party Action.)

Third Department, July 3, 2002

## APPEARANCES OF COUNSEL

*Seymour Fox P.C.,* Troy (*Bonnie P. Chavin* of counsel), for appellants.

*O'Connor, O'Connor, Mayberger & First P.C.,* Albany (*Colleen D. Galligan* of counsel), for T.R.I.P. Redevelopment Associates and another, respondents.

## OPINION OF THE COURT

SPAIN, J.

Plaintiffs commenced this negligence action seeking damages for lead poisoning injuries which plaintiff Shane L. Wynn (hereinafter the infant) allegedly sustained as a result of ingestion and/or inhalation of lead-based paint in the residential building owned by defendants in which plaintiffs resided from May 1991 through April 1993. Defendants are engaged in the business of community revitalization in which they, inter alia, purchase, develop and manage affordable housing in the City of Troy, Rensselaer County. In 1980, defendants purchased the subject three-story residential building and thereafter entered into an agreement with Troy Architectural Project which resulted in the "complete restoration" of the building. Defendants assert that all interior surfaces were either removed, covered with new sheetrock or brick and painted with nonlead paint or, at the least, the existing surfaces were painted over with nonlead paint.[1] No specifics were presented regarding the restoration of stairs, railings or other woodwork. Thereafter, the City Code Enforcement Bureau issued a certificate of occupancy.

Plaintiff Adriana E. Wynn (hereinafter plaintiff) leased the first floor apartment in 1991, renewed in 1992, and resided there until April 1993. The infant was born in July 1991 and thereafter resided in the apartment with plaintiff. In July 1992, the infant was diagnosed with an elevated blood-lead level of 15.2 micrograms per deciliter (hereinafter mcg/dl), and a

---

1. No builder or painter with first-hand involvement in the renovation process testified or submitted an affidavit. The record is devoid of expert or other testimony/evidence regarding abatement standards, such as (1) whether painting over lead paint is permissible or effective, (2) the duration of its efficacy, or (3) how chips/peels in the nonlead cover paint are correctly remedied.

subsequent test in September 1992 showed an increased lead level of 20.5 mcg/dl.[2] The Rensselaer County Health Department notified defendants in October 1992 that a child in the building had tested positive for lead and, following an inspection of the building, informed defendants by letter dated December 30, 1992 that while no lead hazards were detected inside plaintiffs' first floor apartment, lead paint hazards were detected in the interior common areas and on the outside of the building. Specifically, the inspection revealed lead paint on the baseboards along the right and left sides of the interior stairs leading to the second floor, on the kick plates between those stairs, on an exterior wall of the building and on the frame of the front door to the building.[3] Defendants timely completed the interior and exterior abatement measures to the satisfaction of the County Health Department, as confirmed by its June 1993 inspection.

Plaintiffs moved out in April 1993 and, in May 1995, commenced this action against defendants for the infant's lead poisoning and related injuries, including developmental and behavioral problems claimed to relate to his ingestion and/or inhalation of lead-based paint chips and dust in defendants' building, and also sought damages for plaintiff's derivative claim for loss of services.[4] Following joinder of issue, defendants moved for summary judgment dismissing the complaint and plaintiffs cross-moved for summary judgment in their favor. Supreme Court granted defendants' motion and dismissed the complaint, and denied plaintiffs' cross motion. Plaintiffs now appeal.

Although this action involves the still-emerging area of the liability of landlords for lead paint poisoning of children residing in their buildings, it nonetheless remains, fundamentally, a common-law negligence action addressed to the duty of landlords to inspect and maintain the *common areas* of their

---

**2.** An elevated lead level is "a blood lead level greater than or equal to [10 mcg/dl] of whole blood" (Public Health Law § 1370 [6]; *see*, 10 NYCRR 67-1.1 [d]; 24 CFR 882.109 [i] [2]; *see also, Walton v Albany Community Dev. Agency*, 279 AD2d 93, 95 n 1).

**3.** Although a lead pipe was part of the water service line, no detectable level of lead was present in a tested water sample.

**4.** Defendants commenced a third-party action against Paul J. Carusone, Jr., the owner of the apartment into which plaintiffs moved after leaving the building herein, which apartment also tested positive for lead contamination in December 1994. Plaintiffs initiated a separate action against Carusone who, according to plaintiffs' brief, settled with plaintiffs in September 2001. Carusone is not a party to this appeal.

premises in a reasonably safe condition. Under long-standing common law, a landlord has a duty to use ordinary care to keep those areas which are reserved and intended for the common use of the tenants and owner of the building and subject to the landlord's control, i.e., the common areas, "in a reasonably safe and suitable condition" (*Walsh v Frey*, 116 App Div 527, 528; *see, Bernstein v El-Mar Painting & Decorating Co.*, 13 NY2d 1053, 1055; *Harrington v 615 W. Corp.*, 2 NY2d 476, 482; *Altz v Leiberson*, 233 NY 16, 17 [Cardozo, J.]; *Hirsch v Radt*, 228 NY 100, 104; *Dollard v Roberts*, 130 NY 269; *see also, Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 643; *Golob v Pasinsky*, 178 NY 458, 461). In contrast, historically—at common law—landowners had *no duty* to maintain in good repair *leased* premises for which they had transferred possession and, thus, they generally could not be held liable for injuries caused by defective conditions in leased premises (*see, Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316, 322, *cert denied* 444 US 992; *Campbell v Elsie S. Holding Co.*, 251 NY 446; *Altz v Leiberson*, *supra* at 17; *Edwards v New York & Harlem R.R. Co.*, 98 NY 245, 250; *see also, Juarez v Wavecrest Mgt. Team*, *supra* at 643). Over time, this doctrine was relaxed and landlords saw a measured expansion of their duties to maintain and repair dangerous conditions in their *leased* premises, of which they had notice and a reasonable opportunity to repair, under various contract and lease principles (*see, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 565-566; *Worth Distribs. v Latham*, 59 NY2d 231; *Putnam v Stout*, 38 NY2d 607, 616-617), by statute (*see, Juarez v Wavecrest Mgt. Team*, *supra* at 642-643; *Park W. Mgt. Corp. v Mitchell*, *supra* at 325, 328; *Altz v Leiberson*, *supra*; *see also*, Multiple Dwelling Law § 78) and, again recently, under traditional common-law negligence principles (*see, Chapman v Silber*, 97 NY2d 9, 19-22). Thus, a review of the common law governing premises liability and the duty of landlords to maintain their premises reflects that a distinction was drawn and exists between leased premises, such as an apartment unit of which possession has been transferred to a tenant, and common areas, such as stairs and hallways intended and required to be used by tenants and to which the landlord generally retains possession and unrestricted access.

It is also well established that in order for landlords to be liable for injuries resulting from a defective condition upon their premises, the plaintiffs must demonstrate "that the landlord[s] had actual or constructive notice of the condition for such a pe-

riod of time that, in the exercise of reasonable care, it should have been corrected" (*Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 646, *supra*; *see, Lyons v Cold Brook Cr. Realty Corp.*, 268 AD2d 659; *Pacelli v Pinsley*, 267 AD2d 706) and that the failure to do so caused the plaintiffs' injuries (*see, Juarez v Wavecrest Mgt. Team*, *supra* at 646, 648; *Perry v Uccellini Enters.*, 275 AD2d 495, 496-497). In *Chapman v Silber* (*supra*), the Court of Appeals recently addressed claims of lead paint poisoning suffered by tenants' children which the plaintiffs therein attributed to chipping and peeling lead-based paint *inside* their apartments. The Court held that, absent controlling legislation, where the plaintiffs are not able to show that their landlords actually knew that lead was present in the chipped and peeling paint in their apartments, i.e., the landlords' *actual notice* of the lead hazards, the plaintiffs could raise a triable issue of fact so as to defeat their landlords' summary judgment motions premised upon lack of notice, by showing that the landlords:

> "(1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) [were] aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment" (*id.* at 15).

The Court held that such a five-part showing would entitle the jury to find that a landlord had *constructive notice* of the lead hazard condition, based upon actual knowledge "of the existence of many conditions indicating a lead paint hazard to young children" (*id.* at 21), i.e., such a showing would "raise an issue [of fact] as to the landlord's knowledge of a high degree of risk that there was a lead paint danger in the apartment sufficient to trigger its duty to address the condition" (*id.* at 22).

Here, since defendants deny having actual notice that there was a lead paint hazard in the building and plaintiffs did not offer proof that they provided notice to defendants, the issue is whether plaintiffs established that defendants/landlords had constructive notice of the dangerous condition sufficient to survive defendants' motion. We find that plaintiffs sufficiently raised a question of fact as to whether defendants knew or should have known of the existence of many conditions indicating a lead paint hazard to children, so as to enable but not require a jury to find that defendants had constructive notice.

In this case, viewing the evidence most favorably to plaintiffs on defendants' summary judgment motion, defendants admitted through their executive director that, as of the time of the infant's exposure, they had knowledge of possible lead hazards in older buildings and that this building may contain lead paint and that they were "probably" aware of the harmful effects of lead-based paint on children. Plaintiff's lease application established defendants' knowledge that an infant was living in this apartment. Thus, the second, fourth and fifth parts of the *Chapman* showing are satisfied. However, in our view, application of the remaining parts of the showing set out in *Chapman*—the first and third—to these facts requires further analysis.

Here, defendants retained possession of the common areas, obviating any need to "retain[ ] a right of entry" to their property—the first prong—and had a duty, under long-standing common law, to make repairs and maintain the common areas in a reasonably safe condition (*see, Walsh v Frey*, 116 App Div 527, *supra*); as such, they need not have "*assumed* a duty to make repairs" (*Chapman v Silber*, 97 NY2d 9, 15, *supra* [emphasis supplied]). Of course, regarding the third *Chapman* prong, tenants claiming the existence of a lead paint hazard *inside* their leased apartments need to show actual notice, i.e., either that they had complained to the landlords about chipped and peeling paint or that the landlords have admitted actually observing such a condition, which, combined with the other four *Chapman* factors, establishes the landlords' constructive notice of a condition which needed to be addressed behind the closed doors of their apartments (*see, id.*). In contrast, defendants/landlords herein had unrestricted access to the common areas and building exterior, thus undermining the necessity of, or justification for, placing the obligation *on the tenants* to provide actual notice to the landlords of the condition.

Indeed, part of a landlord's obligation to maintain the common areas of the premises in a reasonably safe condition is the duty to use reasonable care to inspect and repair common areas, and the landlord is generally chargeable with notice of the dangerous conditions which a reasonable inspection would have discovered—the adequacy of the inspections usually being a question for the jury (*see, Monroe v City of New York*, 67 AD2d 89, 95-97; *see also, Century Indem. Co. v Arnold*, 153 F2d 531 [2d Cir 1946], *cert denied* 328 US 854; *Beauchamp v New York City Hous. Auth.*, 12 NY2d 400, 407-408; *Lunde v Nichols Yacht Sales*, 143 AD2d 816, 817; *Buria v Rosedale Eng'g Corp.*, 7

AD2d 486, 488, *lv denied* 7 NY2d 706; *Egerton v Lavarello*, 283 App Div 984; *Fish v Estate of Elizabeth McCarthy, Inc.*, 224 App Div 160, 163-164; 85 NY Jur 2d, Premises Liability §§ 53, 58, 59, 164, 195, 199, 201; *cf., Fischer v Battery Bldg. Maintenance Co.*, 135 AD2d 378, 379-380). Thus, the third prong in *Chapman*, when applied to common areas, is satisfied when the landlord's constructive or actual notice of the chipping paint is demonstrated.

In the case of multiple unit apartment buildings, for example, tenants who reside with young children in a lower floor unit may be entirely unaware of the presence of chipped/peeling lead-based paint and dust falling down a common stairwell from higher floors, which is causing elevated blood levels in their children who regularly spend time in the hallway and/or on the stairs which are used to access their apartments. Plaintiff testified that while she had never reported it to defendants, there was a chronic, visible problem of chipping wood and peeling paint in the hallway where her infant often played. It has been recognized that to constitute constructive notice to a landowner of a defect or dangerous condition, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the owner] to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837). Just as landlords who deliberately refrain from testing for lead inside apartments, thereby avoiding actual notice of lead in the paint, cannot shield themselves from all liability (*see, Chapman v Silber*, 97 NY2d 9, 20-21, *supra*), landlords do not avoid constructive notice of possible lead-based paint hazards in the common areas or exterior of their buildings if a jury determines that they failed to take reasonable measures to inspect and maintain them.

Thus, adapting the *Chapman* showing to the setting of the common areas of an apartment building, we hold that the tenants/plaintiffs here raised a triable issue of fact regarding defendants' constructive notice of a lead-based hazard in the common areas and exterior, by showing that defendants (1) knew that the apartment was constructed at a time before lead-based interior paint was banned, (2) knew of the hazards of lead-based paint to young children, (3) knew that a young child lived in the apartment, (4) retained control over and sufficient access to the common areas where the lead-based paint hazard was detected, and (5) had actual or constructive notice, i.e., were aware or should have been aware of the chipping or

peeling paint problems, as demonstrated here by plaintiff's testimony that the chipping or peeling paint was visible and existed for a sufficient period of time to permit the landlords to discover and remedy it. Moreover, defendants agreed in the lease to "regularly clean all common areas" and to "maintain the common areas and facilities in a safe condition." Because defendants had a common-law obligation to inspect and maintain the nonleased portions of the building, a jury may find that they were aware or should have been aware of the visible, chronic paint condition in the common areas as described by plaintiff's testimony—credited by the Court for purposes of defendants' summary judgment motion. Under these facts, plaintiffs were not required, in order to defeat defendants' motion and satisfy the third *Chapman* prong, to show defendants had actual notice, i.e., that plaintiff reported the chipped paint to the owner or that the owner actually observed the chipped paint (*cf., id.* at 15, 22).

We cannot agree with defendants' assertion that the affidavit of the architect who oversaw the renovation of this building established defendants' lack of notice of lead-based paint in the building. The architect stated that as part of the renovation "all interior surfaces" were removed and the new walls and surfaces were painted with nonlead latex paint, and that "virtually every wall in the premises underwent either removal, new sheetrock, new brick, new foundation, or at the least new paint." However, plaintiff testified to observing chipping and peeling paint in the common areas during her tenancy and lead-based paint was detected in those areas. Assuming that condition was the product of painting over lead-based paint during the renovation process, defendants did not submit any evidence that this was an abatement measure or addressing the adequacy or duration of that painting-over as an abatement measure or their follow-up maintenance measures.[5] Thus, while it may be relevant to the ultimate determination of defendants' negligence, if any, that the area in which the lead paint hazard was detected was freshly painted with nonlead-based paint a decade earlier, it does not entitle defendants to summary judgment dismissing the complaint on lack of notice grounds (*cf., Chapman v Silber, supra; Stover v Robilotto, supra* [companion case; in both, apartments were newly painted just

---

5. Although applying the Administrative Code of the City of New York, the Court of Appeals in *Juarez v Wavecrest Mgt. Team* (88 NY2d 628, *supra*) invoked a "standard of reasonableness" as the measure of the adequacy of a landlord's abatement measures (*id.* at 645).

prior to the plaintiffs' tenancies, the plaintiffs in *Chapman* raised a question of fact regarding the defendants' constructive notice while the plaintiffs in *Stover* failed to do so]; *see, Vega v Molina*, 240 AD2d 399, 400, *lv denied* 90 NY2d 808; *Morales v Reyes*, 187 Misc 2d 390, 394).

Defendants also moved for summary judgment on the ground that plaintiffs failed to establish, prima facie, a causal connection between the infant's exposure to lead-based paint in this building and his claimed injuries.[6] In a case involving a claim of exposure to lead-based paint hazards *inside* an apartment, the Court of Appeals held that a plaintiff established causation by producing evidence that the child's apartment contained a hazardous level of lead-based paint, that the child was observed ingesting paint fragments and dust and had elevated blood lead levels, and that the child did not manifest the pertinent symptoms or behavioral changes before moving into the apartment (*see, Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 646, *supra; Walton v Albany Community Dev. Agency*, 279 AD2d 93, 95). Courts have not held, however, that a plaintiff must produce identical evidence to defeat a defendant/landlord's summary judgment motion premised upon the absence of causation.

Defendants, as the movants, submitted no medical affidavits or other evidence that the infant's conditions were related to factors other than his exposure to lead or that the exposure occurred elsewhere (*cf., Walton v Albany Community Dev. Agency, supra* at 95) and did not meet their initial burden as movants of demonstrating the absence of issues of fact regarding the causal connections between the child's injuries and his ingestion or inhalation of lead-based paint (*see, id.* at 95-96). Further, lead poisoning itself is an actionable injury (*see, id.* at 94, 96).

Moreover, plaintiffs offered proof that the hallway/stairway just *outside* their first floor apartment contained a hazardous level of lead-based paint, that the child had exclusively resided in that apartment at the time that he tested positive for elevated blood lead levels and that certain behavioral problems had manifested themselves by the time they moved out. While plaintiff had not actually observed the infant eating paint chips, she did testify that he often played in the hallway and put his toys in his mouth which had dust on them, and that

---

**6.** Plaintiffs allege in their bill of particulars that the infant's injuries included lead poisoning, hyperactivity, various respiratory and gastroenterological problems, behavioral and developmental problems and dermatological problems.

she regularly dusted and/or mopped the hallway to address the chronic problem there of chipping wood and paint and dirt/debris. We find plaintiffs' evidence to be sufficient to defeat defendants' motion on this basis.

Accordingly, because triable questions of fact were raised regarding, among other things, defendants' notice and causation, neither of the parties was entitled to summary judgment.

CARDONA, P.J., CREW III, CARPINELLO and ROSE, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment; motion denied; and, as so modified, affirmed.