C.T. v Ezra (2024 NY Slip Op 51776(U))

[*1]

C.T. v Ezra

2024 NY Slip Op 51776(U)

Decided on December 16, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 16, 2024
Supreme Court, Kings County

C.T., an infant by her mother and natural guardian, DANIELLE [redacted], DANIELLE [redacted] individually, and GEORGE [redacted], Plaintiffs,

against
Yoram Ezra and KAREN EZRA a/k/a KAREN ROTH EZRA, Defendants.

Index No. 520350/2019

Frankel Law Firm, New York City (Reuven S. Frankel of counsel), for Plaintiffs.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Joseph Baiocco of counsel), for Defendants.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 21-75, 77-83.
Upon the foregoing papers, having heard oral argument, and due deliberation having [*2]been had the within motion is determined as hereinafter set forth.
Introduction
In this action by Plaintiffs C.T. ("C.T."), an infant, and Danielle [redacted] ("Danielle") and George [redacted] ("George"), her parents, against Defendants Yoram Ezra ("Yoram") and Karen Ezra ("Karen"), alleging personal injuries sustained by C.T. from lead-based paint, Plaintiffs move for summary judgment on the issues of liability and causation as to C.T's cause of action for negligence.
Defendants Yoram and Karen co-owned the subject property located at 34 1st Street, Brooklyn, New York, when Plaintiffs Danielle and George initially leased the second-floor apartment in 2016. As the subject property was constructed in the late 1800s to early 1900s (see NYSCEF Doc No. 30 at 29, lines 3-4), it was required that all parties sign a lead disclosure form stating that the subject premises was built before 1978 and may contain lead-based paint and dust, which are especially harmful to children (see id. at 64, lines 3-11). Plaintiffs Danielle and George renewed their lease in 2017 and again in 2018 and, on an unspecified date during this time, Defendants divorced. Karen subsequently bought out Yoram's share of the property and continued residing in the apartment (see NYSCEF Doc No. 52).
Karen was responsible for the maintenance on the subject property (see NYSCEF Doc No. 30 at 14, lines 18-21) and was present in the common areas at least once or twice per month (see id. at 84, lines 10-15). She became aware of Plaintiff infant C.T.'s presence on the property when the infant was initially brought home from the hospital (see id. at 178, lines 3-11), yet no repairs were made to the peeling and/or deteriorating paint in the common areas, which were accessible to all residents of the subject premises (see id. at 176-179). On May 20, 2019, the Department of Health and Mental Hygiene ("DOHMH") issued a Commissioner of Health Order to Abate Nuisance ("COTA") determining that the apartment conditions constituted a "lead hazard" and "nuisance" after finding 30 locations containing hazardous concentrations of lead-based paint during an inspection performed the day before (see NYSCEF Doc Nos. 37, 38). Defendants did not object to these findings.
Infant C.T. regularly frequented the subject property's common areas during a developmental age where she regularly placed her fingers in her mouth. On Oct. 27, 2018, C.T. was diagnosed with an elevated blood lead level of 4 g/dL and, following the issuance of the COTA, was found to have a blood lead level of 11 g/dL on April 29, 2019 (see NYSCEF Doc Nos. 37, 39).
Plaintiffs argue that C.T.'s lead exposure and intoxication resulted from the lead paint hazards documented by DOHMH in the subject apartment and caused harm in disrupting C.T.'s heme synthesis. Movant Plaintiffs thereby seek (1) summary judgment against Defendants on the issues of liability and causation as to Plaintiffs' first cause of action and setting this matter down for a trial on the issue of the extent of damages only; and (2) for such other and further relief as the Court deems just and proper.

Plaintiffs' Complaint
A. Issue of Constructive Knowledge
Plaintiffs argue that common law tort principles should apply in lieu of Local Law 1 of [*3]2004 (NYC Administrative Code §27-2056 et seq.) because the subject building is not a multiple dwelling and is partially owner-occupied. Plaintiffs highlighted the rule used by the Court in Chapman v Silber (97 NY2d 9 [2001]): a plaintiff opposing a defendant-landlord's summary judgment motion can establish a triable issue of fact as to constructive notice by demonstrating that the defendant-landlord "(1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment" (id. at 15).
Plaintiffs allege that Karen had constructive knowledge as all applicable elements were met. First, Plaintiffs contend that the first element is met because "[u]nder long-standing common law, a landlord has a duty to use ordinary care to keep those areas which are reserved and intended for the common use of the tenants and owner of the building and subject to the landlord's control, i.e., the common areas, 'in a reasonable safe and suitable condition' " (Wynn v T.R.I.P. Redevelopment Assocs., 296 AD2d 176, 179 [3d Dept 2002] [quoting Walsh v Frey, 116 AD 527, 528 [3d Dept 1906]). Second, Karen allegedly had knowledge that the subject property was constructed before lead-based paint was banned, given Defendants' answer and Karen's testimony. New York banned the use of lead paint in 1970, followed by a nationwide ban in 1978, yet Defendants' answer admitted the property was built before 1901 (see NYSCEF Doc No. 25). Furthermore, when asked about the year the brownstone was built, Karen answered, "I think around 1898, something like that," acknowledging that the building was constructed prior to the 1978 ban (see NYSCEF Doc No. 30 at 29, lines 3-4). Third, Karen was aware of the visibly apparent peeling and deteriorating paint conditions throughout the common area based on her visits once or twice a month (see id. at 84, lines 10-15). Fourth, Karen purportedly acknowledged that lead paint and dust are harmful to children by signing the federally mandated lead disclosure form required when leasing apartments constructed pre-1978 (see NYSCEF Doc No. 29). Fifth, at deposition Karen acknowledged knowing that C.T. lived on the property when she recalled the day Plaintiff brought the infant home from the hospital (see NYSCEF Doc No. 30 at 178, lines 3-11).
B. Issue of Causation
Plaintiffs further contend that causation was established based on depositions from Danielle, DOHMH employee Anielle Thomas ("Thomas"), environmental expert Martin S. Rutstein, Ph.D., and the DOHMH records. Taken together Plaintiffs assert that as a result of Defendants' negligence in failing to maintain the premises in a reasonably safe condition, C.T. was chronically exposed to highly toxic lead paint conditions present in the common areas frequented by the infant.
Danielle testified at deposition to the deteriorating paint conditions within the premises and lack of maintenance to correct the issue. She described the common area as having "paint chips and wall cracks everywhere" and that "dust everywhere . . . had been an ongoing thing" (NYSCEF Doc No. 33 at 54-55). Furthermore, she described the common entrance area as having "paint chips and cracks literally on [Karen's] door" with "paint chips, and cracks, and dust everywhere, on the walls, on the banisters, on the stairwell on the doorjambs" (id. at 79). On the stairway leading to Plaintiffs' apartment, Danielle described one coffin corner as "heavily [*4]chipped, chipped paint, dust everywhere, cracks" (see id. at 79). This testimony aligns with that of Thomas, who explained that the DOHMH only performs XRF testing of painted surfaces that are not in good condition, with the except of friction surfaces and windowsills, an area that young children are more likely to bite. She further clarified that describing a surface as "fair" — as was the case with the subject property — indicates some chipping paint, though not to an "excessive" degree. (See NYSCEF Doc No. 40 at 22-23). Dr. Rutstein's environmental report further suggests that the uneven surfaces exhibited in the photographs shows "a history of chipping, peeling, and/or cracking" which "would have led to ambient lead particulates" (NYSCEF Doc No. 42).
The DOHMH records indicated that XRF testing identified 30 locations with very high concentrations of lead-based paint within the subject premises, 12 of which were in the common area with a reading of 9.9 mg/cm3. Dr. Rutstein claimed that such an amount was "off the charts" and that this, combined with evidence of ingestion, was more than sufficient to suggest the cause of C.T.'s raised blood lead levels. (See NYSCEF Doc No. 42.) Dr. Vicki Sudhalter, a psychologist highly experienced in neuropsychological testing and evaluation of children who have been exposed to toxic substances such as lead, administered generally extensive testing on C.T. and identified neurocognitive deficits. Dr. Sudhalter opined, with a reasonable degree of psychological and neuropsychological certainty, that the results indicate a pediatric brain injury caused by lead poisoning. (See NYSCEF Doc No. 44.) Dr. Michael Weitzman, a nationally recognized expert in the medical and scientific fields related to the treatment, diagnosis, and research relating to childhood lead poisoning, reviewed C.T.'s medical and environmental records as well as testimony and concurred with Dr. Sudhalter's conclusion. Dr. Weitzman noted, with a reasonable degree of medical and scientific certainty, that the cause of this neurocognitive deficit was the ingestion of lead, which inhibited C.T.'s production of heme, a crucial component in oxygen transport throughout the body (see NYSCEF Doc No. 47).
Plaintiffs stress that collectively these specialists opined that the injuries are not indivisible in nature and incapable of apportionment as to any particular exposure throughout the exposure period (see NYSCEF Doc No. 23 citing Wynn, 296 AD2d at 184 ["lead poisoning itself is an actionable injury"]; Munoz v Puretz, 301 AD2d 382, 384 [1st Dept 2003] ["in order to establish causation, plaintiffs must directly link the children's condition to lead in the apartment; the gap between the alleged exposure and the identifying of lead poisoning in the children raises a question of fact"]).

Defendants' Contentions
Defendants maintain that they did not have actual or constructive notice of the allegedly hazardous condition. Defendants contend that the Court should apply the standard, " 'In order for a landlord to be held liable for a lead paint condition, it must be established that the landlord had actual or constructive notice of the hazardous condition and a reasonable opportunity to remedy it, but failed to do so.' Spain v. Holl, 115 AD3d 1368, 1369, 983 NYS2d 192 (4th Dept 2014); see also, Chapman v. Silber, 97 NY2d 9, 19-20, 760 NE2d 329, 734 NYS2d 541 (2001)" (NYSCEF Doc No. 54 at 2). Defendants agree with Plaintiffs regarding applicability of Chapman's five elements in determining the existence of constructive notice to a landlord. Unlike Plaintiffs, however, Defendants focus on the "reasonable opportunity to remedy" the [*5]hazardous lead-based paint condition (see id.). Defendants also do not dispute that, as landlord, Karen had a duty to maintain the premises in a reasonably safe condition (see NYSCEF Doc No. 52 at 2-3, citing Stover v Robilotto, 277 AD2d 801, 801 [3d Dept 2000] [mere presence of chipping and peeling paint doesn't constitute constructive notice of a lead paint hazard, therefore, without additional evidence, the right to reenter and the duty to repair cannot establish constructive notice of a hazardous lead paint condition]).
Defendants claim that Plaintiffs' delay in bringing concerns regarding lead-based paint to Defendants undermines the claim that Defendants were aware or should have been aware of the allegedly hazardous condition. Defendants point out that the first complaint received by Karen was via email on April 27, 2019 regarding concerns over a lead-based paint hazard in the common area of the building (see NYSCEF Doc No. 66 at PDF 15). Prior to the COTA, Defendants never received any warnings from the Department of Health regarding dangerous paint conditions. George testified that before C.T. was born he did not have occasion to make any complaints or request for maintenance regarding issues of chipping and peeling paint (see NYSCEF Doc No. 63 at 55, line 21, through 56, line 3). Similarly, Danielle attested to not being aware of chipping and peeling paint conditions prior to C.T.'s birth (see NYSCEF Doc No. 60 at 86, lines 22-25).
Defendants emphasize that Plaintiffs did not provide evidence that Defendants had a reasonable opportunity to address the alleged hazardous conditions before being notified of Plaintiffs' intent to forego extending their lease and vacate the apartment (see NYSCEF Doc No. 52 citing Cunningham v Anderson, 85 AD3d 1370, 1372 [3d Dept 2011] ["regardless of whether the other (Chapman) factors for notice were established, (there is) a question of fact as to whether defendant was on notice of the need to correct any lead paint problems . . . Accordingly, SC correctly denied Ps application for partial summary judgment"]). Karen responded to Plaintiffs' email on June 4, 2019, explaining that she "had no knowledge of lead-based paint and/or lead-based paint hazards in the building nor did [she] have any reports or records pertaining to lead-based paint and/or lead-based paint hazards" (see NYSCEF Doc No. 66 at PDF 19-20). Upon receiving the report from the DOHMH, Karen conducted a personal inspection of the second-floor apartment to review the walls in violation, yet "saw no peeling or chipped paint" but "nicks from furniture" (see NYSCEF Doc No. 65 at 77, lines 4-9). Although Defendants admit that lead-based paint hazards are not easily detectable, Defendants nevertheless maintain that they never noticed anything that would indicate a problem and insist that the common areas were always in fine condition.
Finally, Plaintiffs allegedly failed to present any evidence that the peeling or chipping paint in the common areas was "visible and apparent [or that it . . . exist[ed] for a sufficient length of time to allow Defendants to remedy it" (NYSCEF Doc No. 54 at 3, citing Johnson v Giles, 128 AD3d 1333, 1334-1335 [4th Dept 2015]). Defendants also cited to Brown v Marathon Realty (170 AD2d 426, 427-28 [2d Dept 1991] [merely demonstrating that a building is old and was built during a time when lead-based paint was commonly used is not enough to establish constructive notice]) and Lott-Coakley v Ann-Gur Realty Corp. (23 Misc 3d 1114[A] [Sup Ct, Bronx City 2009], citing Gonzales v Nemetz, 276 AD2d 670, 671 [2d Dept 2000] ["For the purpose of notice, the mere knowledge that a building is old or that there is chipping or peeling paint therein, by themselves do not charge the owner with notice of a lead hazard within his premises"]). Defendants reject the claim that the photographs submitted into evidence show an open and obvious condition.
Defendants elected to not address the issue of causation.

 Discussion
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez v Prospect Hosp., 68 NY2d at 324). Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557, 560 [1980]). If there is any doubt as to the existence of a triable issue of fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party (see Bazdaric v Almah Partners LLC, 41 NY3d 310, 314 [2024]).
To prevail on a negligence action, a "plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (see Shepard v Power, 219 AD3d 769 [2d Dept 2023], quoting Ferreira v City of Binghamton, 38 NY3d 298, 308 [2022]). Here, Defendants do not contest that Karen had a duty to maintain the subject premises, thus the Court turns to the issue of whether Defendants breached their duty to maintain the premises. Defendants solely focused on lack of notice, actual or constructive, and emphasized that they were not afforded a reasonable opportunity to remedy the issue, whereas Plaintiffs asserted Defendants had constructive notice of the conditions based on Chapman.
Both parties assert, and this Court is inclined to agree, that the applicable standard stems from the New York Court of Appeals case Chapman v Silber. As Plaintiffs argue only the existence of constructive notice, the Court will begin by addressing this issue. Chapman articulates a five-prong test for determining whether a landlord had constructive notice of lead-based paint in a building housing a child.
Plaintiffs correctly contend and it is undisputed that the first element is met by Karen's duty to maintain "common areas 'in a reasonable safe and suitable condition' " (Wynn, 296 AD2d at 179; see Torres v United States, 09 Civ. 5092, *3 [SDNY Dec. 23, 2010] ["Under New York common law, landlords or owners of a property, commercial or residential, have an obligation to maintain the common areas in a reasonably safe condition and have a duty to use reasonable care to inspect and repair common areas"]). However, even if it were not, Karen, as an owner occupying the premises, retained her right to enter the premises to make necessary repairs and maintenance (see NYSCEF Doc No. 30 at 14, lines 18-21; Charette v Santspree, 68 AD3d 1583, 1584 [3d Dept 2009] ["Given that defendants, throughout their period of ownership, retained the right to enter the premises to make necessary repairs, all that remains to be decided in connection with their motion for summary judgment is whether evidence has been presented establishing [*6]that they had knowledge that paint was chipping and peeling at the time that plaintiff resided in her apartment").
Furthermore, it is uncontested that Karen had knowledge of the building's construction prior to the lead-based interior paint ban. The Defendants' answer admitted the property was built before 1901 (see NYSCEF Doc No. 25) and Karen stated that she thought the building was built "around 1898" (see NYSCEF Doc No. 30 at 29, line 3). Also uncontested is Defendants' awareness of the hazards of lead-based paint to young children and that infant C.T. resided on the premises. Before signing the original lease, the parties completed the federally mandated lead disclosure form for apartments constructed pre-1978. Furthermore, Karen admitted to being informed of infant C.T.'s birth and subsequent residence at the subject property:
Q. Remember C coming back from the hospital when she was born?
A. Yeah. I mean I remember that they told me that Danielle had given birth and I'm sure they even, you know, said, oh, come take a look at her. I remember   it might not have been the day she came back. Danielle, I believe she had a C-section, but they introduced me to the baby. I gave the baby a present. (Id. at 178, lines 3-11.)
This leaves the final element of whether the landlord "was aware that paint was peeling on the premises" (Chapman, 97 NY2d at 15). Plaintiffs provided photographs of various areas inside their apartment and around the premises, showing purportedly chipped and/or peeling paint, with some areas labeled as "lead paint" and others unlabeled (see NYSCEF Doc Nos. 31, 35). Plaintiffs argue that this physical evidence, combined with Karen's admission to frequenting the areas "once or twice a month" (see NYSCEF Doc No. 30 at 84, lines 10-15) and entering the common spaces to retrieve pet food, visit the Plaintiffs, and receive deliveries (see id. at 85-87), sufficiently demonstrates her awareness of the visibly apparent peeling and deteriorating paint conditions. However, Defendants assert that they were unaware of the condition until receiving the DOHMH report. Karen claims to have noticed only "nicks from furniture" (NYSCEF Doc No. 65 at 77, lines 7) and argues that she never observed anything suggestive of a problem.
Although the photographs show walls that are not in ideal condition, the resolution in some cases makes it challenging to distinguish whether the damage resulted from general wear and tear or from chipping and peeling paint. Furthermore, while the Lead Hazard Report and DOHMH representative both noted the existence of chipped and peeling paint on the premises in the common areas, Karen maintained that she only "saw some nicks from furniture . . . but there was no peeling paint" (see NYSCEF Doc No. 30 at 77, lines 7-9). Compounded with Danielle's own lack of awareness of the painting or peeling paint prior to C.T.'s birth (see NYSCEF Doc No. 60 at 86, lines 22-25), Karen's frequent repainting of the premises, and Karen's infrequent visits to the common areas, that creates an issue of fact regarding whether Defendants were aware of or should have been aware of the condition of the paint and whether it was in a state that required remediation (see Wynn, 296 AD2d at 181 ("[T]he landlord is generally chargeable with notice of the dangerous conditions which a reasonable inspection would have discoveredthe adequacy of the inspections usually being a question for the jury." Also, "[L]andlords do not avoid constructive notice of possible lead-based paint hazards in the common areas or exterior of their buildings if a jury determines that they failed to take reasonable measures to inspect and maintain them" (id. at 182).

Conclusion
Since the third Chapman prong was not satisfied, this Court finds no need to address whether Defendants were actually aware of the lead-based paint. With neither actual nor constructive notice established, the Court deems it academic to proceed with determining whether harm occurred or whether Defendants were provided sufficient time to remedy the hazardous condition after receiving notice.
Viewing the facts in the light most favorable to Defendants (see Bazdaric, 41 NY3d 310), Plaintiffs have not demonstrated the absence of a material issue of fact as to notice (see Alvarez, 68 NY2d 320; Winegrad, 64 NY2d 851; Andre, 35 NY2d 361).
Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is DENIED.