OPINION OF THE COURT
 

 Ciparick, J.
 

 What evidence of notice must a plaintiff-tenant in a lead paint poisoning case proffer in order to survive defendant-landlord’s motion for summary judgment? We conclude that, absent controlling legislation, a triable issue of fact is raised when a plaintiff shows that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment. Because plaintiffs in
 
 Chapman
 
 have raised an issue of fact as to defendants’ notice of a high degree of risk that a dangerous lead paint hazard existed, the order of the Appellate Division dismissing the complaint should be reversed. Conversely, since plaintiff in
 
 Stover
 
 failed to raise such an issue, no question of fact precluding summary judgment exists and the order of the Appellate Division dismissing that case should be affirmed.
 

 
 *16
 
 I
 

 Chapman v Silber
 

 In August 1994, plaintiffs James and Sallie Chapman rented the second floor apartment at 443 Myrtle Avenue in Albany from Dennis Silber, Jay Silber and Gertrude Silber. On September 23, 1994, shortly after the Chapmans moved into the apartment, Dennis and Gertrude conveyed their interests in the property to Jay and his wife, Judith Harrington. All four were named as defendants and will be collectively referred to as the “landlord.”
 

 The two-year lease between the parties states that “[t]he tenant must maintain the apartment” and that “[t]he tenant agrees, at tenant’s own cost to make all repairs to the apartment * * * whenever the need results from the tenant’s acts or neglect.” The lease further provides “[t]he tenant agrees to allow the landlord to enter the leased premises at any reasonable hour to repair, inspect, install or work * * * and to perform such other work that the landlord may decide is necessary.”
 

 The facts as stated herein are taken from the parties’ affidavits and deposition testimony. The Chapmans moved into the apartment with their three children, including one-year-old Jaquan. Before they moved in, Dennis Silber painted the apartment. Mrs. Chapman noted that the apartment had been “redone” but that the window sills appeared old and the paint on the second floor porch was chipped and peeling. In spring 1995, the Chapmans observed that the condition of the paint on their porch had deteriorated. As the weather got warmer and the family began to open their windows more frequently, Mrs. Chapman also noticed that the paint in the window tracks was chipped and peeling and that the window sills held an accumulation of paint chips and dust. Mrs. Chapman claims that by July 1995, the condition of the paint in both areas had worsened.
 

 Mrs. Chapman first complained about peeling paint in April or May 1995, when she told defendant Jay Silber that there were large “chunks” of peeling paint on the front porch. She again complained to him about the porch in July 1995 at which time he promised he would take care of the situation. He did so by paying James Chapman $300 to paint the porch.
 

 In addition to these complaints, Mrs. Chapman claims that Dennis Silber, Jay Silber and Judith Harrington all were in the upstairs apartment during her tenancy and each saw the
 
 *17
 
 condition of the paint. Dennis came to the apartment to repair a jammed window one week after the Chapmans moved in. Jay Silber and Judith Harrington came to the apartment in October or November 1994 to take over day-to-day responsibility for the apartment and to collect the rent.
 

 While admitting his presence in the apartment at various times, Dennis Silber denied seeing chipped or peeling paint despite the fact that he and his wife resided in that apartment prior to the Chapman tenancy. He also painted the apartment before the Chapmans rented it and claims that the front porch was scuffed, but not peeling, at the time the Chapmans moved in. Dennis knew that the building was old and was aware of the hazards of lead paint.
 

 Jay Silber admitted visiting the apartment on several occasions while the Chapmans were living there in order to make repairs. Jay was aware that the house was built in the early 1900’s but claimed not to be aware of the dangers of lead-based paint. He did admit the possibility that chipped or peeling paint could have been present in the apartment.
 

 Judith Harrington was aware that lead paint was dangerous. She recalled receiving a call from Sallie Chapman in summer 1995 in which Mrs. Chapman requested that something be done about chipping paint on the upstairs porch. When asked who was responsible for maintenance in the Chapman apartment, Ms. Harrington responded, “Dennis [Silber], from the point at which we rented to [the Chapmans] until he was no longer part of the partnership, then my husband Jay [Silber].” Ms. Harrington also admitted that her husband would visit the property “when something needed to be fixed.”
 

 Gertrude Silber never visited the property during the Chapman tenancy and had no knowledge of day-to-day operations. She knew, however, that lead was dangerous.
 

 About a month after moving in, a blood test performed as part of a routine physical examination indicated that Jaquan had a moderately elevated level of lead in his blood. A second test performed about two months later showed that the condition persisted. On August 15, 1995, Jaquan’s blood lead level tested so high that he had to be re-tested two days later. The August 17th test showed the same high blood lead level. The City of Albany inspected the premises and detected the presence of lead paint. On August 21, 1995, another test revealed even higher levels of lead in Jaquan’s blood and he was hospitalized. The family moved out of the apartment by September 1995.
 

 
 *18
 
 James and Sallie Chapman commenced this action, in their individual capacities and as parents of Jaquan, alleging claims for common-law negligence, statutory violations evidencing negligence per se, breach of warranty and nuisance.
 
 [1]
 
 Dennis Silber moved for summary judgment dismissing the complaint against him on the grounds that he conveyed his interest in the premises prior to the injury and that he did not have actual or constructive notice of a lead-based paint condition. The other defendants cross-moved on notice grounds as well. Supreme Court denied all defendants’ motions finding issues of fact as to notice. The Appellate Division reversed and granted summary judgment dismissing the complaint. We granted leave to appeal (96 NY2d 709) and now reverse.
 

 Stover v Robilotto
 

 On February 1, 1993, Carlisa Stover, then eight months pregnant, and her five-year-old son moved into the first floor apartment of the two-family home at 22 Judson Street in Albany. Her landlord was James O’Connor.
 
 [2]
 
 Carlisa Stover did not enter into a written lease with Mr. O’Connor but was a month-to-month tenant. The apartment had been re-painted when Ms. Stover moved in. In the year and a half she resided there, she complained to her landlord several times about her bedroom door and toilet. Each time she reported a problem, it was repaired. She never complained about the condition of paint.
 

 Ms. Stover’s younger son, Everton Lewis, was born on March 19, 1993. At about 15 months, when Everton began to walk, both Ms. Stover and her niece observed Everton on the stairway between the upstairs and downstairs apartments removing material from holes in the wall and placing it in his mouth. In September 1994, Everton’s blood lead level was so high he had to be hospitalized. When the child was discharged, Ms. Stover and her family moved into a friend’s apartment and never again resided at 22 Judson Street.
 

 Although James O’Connor did not personally perform the repairs in Ms. Stover’s apartment, he had been there twice to assess the problem with the door. He claimed not to have seen chipping paint inside the apartment. Mr. O’Connor also testi
 
 *19
 
 fied at his deposition that he knew lead paint was dangerous to children. Mr. O’Connor claimed, however, that he was not aware either that Ms. Stover had a young child when she moved in or that she was pregnant at the time. Mr. O’Connor testified, however, that he later learned of the older child when the boy visited his grocery store.
 

 Carlisa Stover commenced this action, in her individual capacity and as mother of Everton Lewis, against her landlord, alleging the same causes of action as the Chapmans.
 
 [3]
 
 Supreme Court granted defendant’s motion for summary judgment, concluding that defendant did not have notice of a hazardous lead paint condition. The Appellate Division affirmed. We granted leave to appeal (96 NY2d 709) and now affirm.
 

 II
 

 Our analysis begins with an examination of premises liability generally, and the duty imposed on landlords to maintain premises in reasonably safe condition. Historically, landlords could not be held hable for injuries caused by dangerous conditions on their premises when possession had been transferred (see,
 
 Campbell v Elsie S. Holding Co.,
 
 251 NY 446). Courts opined that conveyance of possession by lease was similar in effect to conveyance of title (see,
 
 Park
 
 W.
 
 Mgt. Corp. v Mitchell,
 
 47 NY2d 316, 322; see
 
 also, Edwards v New York & Harlem R. R. Co.,
 
 98 NY 245, 250). In time, this Court relaxed the doctrine, imposing a duty to remedy dangerous conditions on a landlord who had contractually assumed the responsibility to make repairs (see,
 
 Putnam v Stout,
 
 38 NY2d 607, 616-617). Thus, a landlord may be found liable for failure to repair a dangerous condition, of which it has notice, on leased premises if the landlord assumes a duty to make repairs and reserves the right to enter in order to inspect or to make such repairs
 
 (Worth Distribs. v Latham,
 
 59 NY2d 231, 238; Restatement [Second] of Torts § 357).
 

 Alternatively, such a duty may be imposed by statute. For example, the City of New York has enacted legislation that requires landlords to remove lead paint hazards from their premises.
 
 [4]
 
 In
 
 Juarez v Wavecrest Mgt. Team
 
 (88 NY2d 628), we recognized that the Administrative Code of the City of New
 
 *20
 
 York created a presumption of notice and imposed a specific duty on landlords to maintain their leased premises in reasonably safe condition with respect to lead paint hazards. We further concluded that the legislation imposed a specific duty on landlords to abate lead paint hazards and impliedly granted landlords a right of entry to effectuate such repairs
 
 (Juarez, supra,
 
 88 NY2d, at 642).
 

 New York State has not enacted similar legislation that imposes a duty on landlords to test for or abate lead-based paint hazards absent official notification of a problem
 
 (see,
 
 Public Health Law § 1373). We recognize, moreover, that absent explicit legislative authorization we should not hastily impose a new duty since doing so “requires a weighing of policy interests, a responsibility that rests with Federal, State and local legislative bodies”
 
 (Juarez, supra,
 
 88 NY2d, at 641). The absence of a statutory scheme, however, is not fatal to this type of action. Where certain requisites are satisfied, a landlord still may be liable for negligence under traditional common-law principles.
 

 Ill
 

 The decisions of the Appellate Division in
 
 Chapman
 
 and
 
 Stover
 
 focused primarily on the issue of notice. This was an appropriate inquiry since, without notice of a specific dangerous condition, an out-of-possession landlord cannot be faulted for failing to repair it
 
 (see, Juarez, supra,
 
 88 NY2d, at 646). The Appellate Division concluded as a matter of law that neither landlord knew, or should have known, of the existence of a hazardous lead paint condition. We disagree in
 
 Chapman,
 
 and agree in
 
 Stover.
 

 In granting summary judgment to the defendants, the Appellate Division applied the following notice principle: The fact that a landlord is aware of the presence of chipped or peeling paint in an old apartment does not raise an issue of fact as to the landlord’s notice of lead in the paint. That rule leaves plaintiffs in an impossible situation. Defendant-landlords cannot be held liable for a hazardous lead paint condition unless they are actually aware that lead is present in chipping paint. Yet because lead in paint is undetectable to the senses, a landlord cannot actually know of its presence without testing. Thus, applying the Appellate Division principle, landlords who
 
 *21
 
 deliberately refrain from testing for lead can shield themselves from liability.
 
 [5]
 

 We conclude that only in
 
 Chapman
 
 is there a triable issue of fact as to whether the landlord knew or should have known of a hazardous condition on its premises. Notwithstanding the Appellate Division holding that the lease did not impose a duty on the landlord to make repairs, Ms. Harrington’s uncontroverted testimony reveals that the landlord assumed that duty. Moreover, only in
 
 Chapman
 
 was the landlord aware that, due to its age, the premises probably contained lead paint and, that ingestion of lead paint chips posed a health hazard to young children. The landlord further admitted awareness that young children lived in the apartment and that there had been complaints about chipped and peeling paint. Under these circumstances, a jury could reasonably infer that the landlord, at the least,
 
 should have known
 
 of the hazardous lead paint condition.
 

 In so holding, we are mindful of our own prior admonitions regarding the creation of a new duty where none existed before
 
 (Juarez,
 
 supra, 88 NY2d, at 641;
 
 see also, Hamilton v Beretta U.S.A. Corp.,
 
 96 NY2d 222, 232-233). We decline to impose a new duty on landlords to test for the existence of lead in leased properties based solely upon the “general knowledge” of the dangers of lead-based paints in older homes
 
 (cf., Antwaun A. ex rel. Muwonge v Heritage Mut. Ins. Co.,
 
 228 Wis 2d 44, 62, 596 NW2d 456, 464). We have never held, as the Supreme Court of Wisconsin did in
 
 Antwaun
 
 A., that general knowledge of a particular type of risk creates a duty to test for, or remedy, it. We hold only that a landlord who actually knows of the existence of many conditions indicating a lead paint hazard to young children may, in the minds of the jury, also be charged constructively with notice of the hazard.
 

 This rule is merely an application of familiar notice principles, as illustrated by
 
 Queeney v Willi
 
 (225 NY 374). There the tenant was injured when a water pipe that was improperly insulated froze and burst. Although the pipe itself was concealed from view, the tenant advised the landlord that the walls and ceiling of the bedroom were exceedingly damp. The
 
 *22
 
 tenant proceeded on a theory that the dampness was constructive notice of a leak or some other defective condition. This Court held that “damp walls were plain notice of something to be remedied” reasoning that, “[t]he landlord may not sit helplessly by and say that he cannot see what produces such conditions”
 
 (id.,
 
 at 378-379). So too, here, the landlord having contractually retained a right of entry and having assumed a duty to make repairs may not use the invisibility of lead contained in paint to avoid liability.
 

 Applying the foregoing principle, defendants in Chapman— aware of the age of the building, the presence of chipped and peeling paint, the dangers of lead paint to children, and the presence of young children in the apartment — may have an obligation to take precautions to provide a reasonably safe environment for plaintiffs. Although plaintiffs in
 
 Chapman
 
 could not show that the landlord actually knew that lead was present in the chipped and peeling paint in their apartment, they did raise an issue as to the landlord’s knowledge of a high degree of risk that there was a lead paint danger in the apartment sufficient to trigger its duty to address the condition
 
 (see, e.g., Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507, 519 [liability imposed on landowner because of actual knowledge of a “likelihood” of danger]). For that reason, the question as to whether the landlord in
 
 Chapman
 
 should have known of a lead paint condition should be presented to the trier of fact, precluding summary judgment. Plaintiffs have yet to establish the other elements of their negligence cause of action, including a negligent breach of the landlord’s duty and a legally sufficient causal nexus between the alleged breach and the claimed damages.
 

 By contrast, in
 
 Stover,
 
 there is no record evidence that the landlord was on actual or constructive notice of a chipped or peeling paint condition inside the apartment. The landlord had entered to make repairs to the bedroom door and toilet and had repaired holes in a stairway wall — a common area of the building never identified as a source of lead contamination. The evidence is insufficient to raise an issue of fact as to whether the landlord in
 
 Stover
 
 should have known of a lead paint condition.
 

 Accordingly, the order of the Appellate Division in
 
 Chapman
 
 should be reversed, with costs, and defendants’ motions for summary judgment denied and the order of the Appellate Division in
 
 Stover
 
 should be affirmed, without costs.
 

 
 *23
 
 Chief Judge Kaye and Judges Smith, Levine, Wesley and Rosenblatt concur; Judge Graffeo taking no part.
 

 In
 
 Chapman v Silber:
 
 Order reversed, etc.
 

 In
 
 Stover v Robilotto:
 
 Order affirmed, without costs.
 

 [1]
 

 . Plaintiff pursues a negligence theory on this appeal. Her other causes of action, including the one based on title X of the Public Health Law, are not pressed here.
 

 [2]
 

 . James O’Connor died on May 5, 1998 and has been substituted on this appeal by the executor of his estate, Yolando Robilotto.
 

 [3]
 

 . Plaintiff only presses her cause of action for common-law negligence on this appeal, all other causes of action having been dismissed.
 

 [4]
 

 . The provisions relating to lead paint hazards in the Administrative Code of the City of New York § 27-2013 (h) were subsequently repealed (Local Laws, 1999, No. 38 of City of NY § 5) and replaced with the provisions
 
 *20
 
 contained at Administrative Code § 27-2056.1
 
 et seq.
 
 The validity of these new provisions is currently the subject of ongoing litigation.
 

 [5]
 

 . In their motions for summary judgment, neither landlord raised an issue as to the feasability of testing for lead paint in these apartments. Although the parties and their
 
 amici
 
 debated issues of cost and reliability of various private testing options at oral argument in this Court, it is unclear from the submissions whether government-funded testing is available to landlords who request it.