Egan Jr., J.
Appeal from an order of the Supreme Court (McNamara, J.), entered July 31, 2012 in Albany County, which, among other things, granted a motion by defendant Double D and S Realty Management Corporation for summary judgment dismissing the complaint against it.
In April 1991, defendant Double D and S Realty Management Corporation (hereinafter defendant) purchased a three-unit dwelling located at 78 Morton Avenue in the City of Albany. Between June 1991 and August 1992, plaintiff (born in 1990) and her mother resided in the second-floor apartment at that address. In July 1992, tests revealed that plaintiff had elevated levels of lead in her blood, prompting the Albany County Health Department to inspect the apartment where she resided. By letter dated July 23, 1992, defendant was advised of the presence of lead-based paint on the premises and thereafter abated the condition.
In 2009, plaintiff commenced this action seeking to recover for injuries allegedly sustained as a result of her exposure to lead-based paint while residing in the apartment.[1] Following joinder of issue, defendant moved for summary judgment dismissing the complaint against it, and plaintiff cross-moved for, among other things, summary judgment and dismissal of defendant’s affirmative defenses. Supreme Court granted defendant’s motion and denied plaintiffs cross motion, and this appeal by plaintiff ensued.
We affirm. “[I]n order for a landlord to be held liable for injuries resulting from a defective condition upon the premises, the plaintiff must establish that the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected” (Robinson v Bartlett, 95 AD3d 1531, 1533 [2012] [internal quotation marks and citation omitted; see Cunningham v Anderson, 85 AD3d 1370, 1371 [2011], lv dismissed and denied 17 NY3d 948 [2011]). To establish constructive notice in the context of a lead paint case, the plaintiff must show “that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the *1173 premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment” (Chapman v Silber, 97 NY2d 9, 15 [2001]; accord Van Wert v Randall, 100 AD3d 1079, 1080 [2012]; Robinson v Bartlett, 95 AD3d at 1533; see Williamson v Ringuett, 85 AD3d 1427, 1428 [2011]). On a motion for summary judgment, all five prongs of the Chapman test must be met in order to raise a triable issue of fact as to constructive notice (see Matter of Robinson v Scafidi, 23 AD3d 827, 828 [2005], lv denied 6 NY3d 710 [2006]).
In support of its motion for summary judgment, defendant tendered, among other things, the examination before trial testimony of two of its shareholders—Naum David Matzner and Donald Segal. Matzner testified that he “had no idea” about lead-based paint when defendant purchased the property in question—specifically, he did not have a general understanding that older buildings could contain lead-based paint, he had not experienced any problems with lead-based paint in other rental units, he never discussed this issue with Segal prior to July 1992 and he had no recollection of plaintiffs mother making any complaints regarding the condition of the paint in the subject apartment. Segal offered similar testimony, stating that he had no general knowledge regarding the presence of lead-based paint in older buildings, he had no prior experience with respect to the abatement of that condition, he was not aware that lead-based paint had been banned, he never saw any pamphlets regarding lead-based paint that may have been distributed to plaintiffs mother by any of the local agencies involved in her rental of the premises and he had no discussions with Matzner or defendant’s repair person regarding lead-based paint prior to receiving the July 1992 notice. Like Matzner, Segal also had no recollection of plaintiffs mother complaining about the condition of the paint in the apartment, and he averred in his accompanying affidavit that—at no point prior to or following the rental of the second-floor apartment to plaintiffs mother—did he observe “flaking or chipping paint” therein.[2] Finally, although Matzner and Segal acknowledged receipt of the July 1992 letter from the Albany County Health *1174 Department advising of the presence of lead-based paint in the apartment and the need to undertake abatement efforts, they disavowed any knowledge of a June 1992 violation notice issued by the City of Albany Building Department.[3] ****8
The foregoing proof, in our view, is sufficient to establish—as a matter of law—that defendant lacked actual notice of the presence of lead-based paint in the subject apartment. We reach a similar conclusion with respect to the issue of constructive notice. Although the record reflects that defendant retained a right of entry and assumed a duty to make repairs to the premises, and both Matzner and Segal, in turn, acknowledged that there was at least one child living in the apartment, the proof submitted in support of defendant’s motion is sufficient to demonstrate that defendant (1) did not know that the premises were constructed prior to the point in time when lead-based interior paint was banned, (2) was not aware of any peeling paint in the apartment, and (3) knew nothing of the hazards that lead-based paint posed to children, thereby shifting the burden to plaintiff to tender sufficient admissible proof to raise a question of fact on these points.
In opposition to defendant’s motion—and in support of her cross motion for summary judgment—plaintiff tendered, among other things, numerous reports, articles and studies attesting to the dangers posed to children by lead-based paint. Plaintiff did not, however, submit any proof establishing that defendant was aware of such hazards, nor did plaintiff produce an affidavit from anyone attesting to the presence of peeling or chipped paint in the apartment during the relevant time period. To the extent that plaintiff relies upon the June 1992 code violation notice, the notice itself does not—as previously observed— specify the floor or apartment found to be in violation (see n 3, supra). Plaintiffs reliance upon various statutory provisions, including Public Health Law § 1373 and Real Property Law § 235-b, is equally misplaced, as the cited provisions do not establish constructive notice (see Sykes v Roth, 101 AD3d 1673, 1674 [2012]; Sanders v Patrick, 94 AD3d 1514, 1516 [2012], lv denied 19 NY3d 814 [2012]; Stover v Robilotto, 277 AD2d 801, 802-803 [2000], affd 97 NY2d 9 [2001]; see also Chapman v Silber, 97 NY2d at 21 [declining to impose a duty upon landlords *1175 to test for lead-based paint based solely upon a general knowledge of lead-based paint in older homes]). As plaintiff failed to tender sufficient proof to raise a question of fact as to constructive notice (compare Charette v Santspree, 68 AD3d 1583, 1584-1585 [2009]), Supreme Court properly granted defendant’s motion for summary judgment dismissing the complaint against it. In light of this conclusion, we need not address the remaining arguments raised by plaintiff.
Mercure, J.E, Spain and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

. The action was commenced against defendant, one of its shareholders (Donald E Segal) and the South End Improvement Corporation. The parties subsequently executed a stipulation of discontinuance with respect to Segal. South End, which apparently was granted an indefinite extension of time in which to answer, did not participate in the motions at issue here.

. While the record reflects that defendant had the exterior of the building painted in or about June 1992, Matzner testified that the exterior paint was “fine” when the property was purchased, and Segal testified that “the facade was in good condition” and “wasn’t peeling.” Although Segal acknowledged that “[i]t had been a while since [the building] was painted,” he insisted that at no time was defendant advised that the exterior repainting, which apparently was funded through a local grant program, had anything to do with concerns regarding lead-based paint.

. The second-floor apartment was inspected by the Building Department in March 1991, and a certificate of occupancy was issued in April 1991. The June 1992 notice, which did not specify the floor or apartment found to be in violation of the cited code provisions, directed defendant to “[s] crape and paint where needed bathroom, bedroom, [h] all way” and to “[r]epair lock to front door.”