Mercure, J.P.
Cross appeals from an order of the Supreme Court (O’Shea, J.), entered June 20, 2012 in Chemung County, which, among other things, denied plaintiffs motion for partial summary judgment.
In 1991, when plaintiff was two years old, blood tests revealed that she had a high lead level. She was hospitalized and admitted to the lead program at the Chemung County Health Department (hereinafter CCHD), which performed an inspection of plaintiffs home, an apartment in a house owned by defendants. *1241 The inspection revealed that the house was in poor condition, cluttered and dirty, with “a great deal of pealing [sic] paint & plaster & wallpaper in th[e] home as well as on the front porch & around the side of the house.” Testing showed positive lead results for a number of paint samples taken from interior and exterior areas of the apartment, and a rowboat that plaintiff s father was restoring in the back yard.
CCHD notified defendants, as the owners of the property, of the presence of lead paint in the house. After defendant Clarence E. Fleming and his son completed the abatement work on the apartment by covering the existing paint with lead-free paint, CCHD inspected and approved the repairs. Nevertheless, plaintiffs medical records, which she provided through 1995, showed that she had consistently elevated lead levels even after the abatement work was completed. Her family moved out of defendants’ apartment in 2000.
Plaintiff commenced this action in 2008, and subsequently moved for partial summary judgment, among other things. Defendants cross-moved for summary judgment dismissing the complaint. Supreme Court denied both motions, and the parties now cross-appeal.
We affirm. Initially, we reject the parties’ arguments that Supreme Court erred in denying their respective motions for summary judgment on notice and causation. Defendants assert that plaintiff is unable to prove either notice or that any negligence on defendants’ part was a substantial factor in bringing about her alleged injuries; plaintiff contends that she has established both constructive notice and causation. With respect to notice, “[i]t is well settled that in order for a landlord to be held liable for injuries resulting from a defective condition upon the premises, the plaintiff must establish that the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected” (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 646 [1996]; see Cunningham v Anderson, 85 AD3d 1370, 1371 [2011], lv dismissed and denied 17 NY3d 948 [2011]). In this context, constructive notice may be demonstrated by a showing “that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment” (Chapman v Silber, 97 NY2d 9, 15 [2001]; accord Robinson v Bartlett, 95 AD3d 1531, 1533 [2012]).
*1242 In our view, Supreme Court properly determined that questions of fact exist with respect to constructive notice (see Robinson v Bartlett, 95 AD3d at 1533-1534; Williamson v Ringuett, 85 AD 3d 1427, 1428-1429 [2011]; Cunningham v Anderson, 85 AD3d at 1371-1372; Jackson v Brown, 26 AD3d 804, 805 [2006]). Defendants denied knowledge of the third and fourth Chapman criteria prior to notice from CCHD—that paint was peeling on the premises and that lead paint posed a hazard to children—and Fleming could not recall whether they knew a young child was living in the apartment. On appeal before us, defendants primarily challenge plaintiffs ability to establish the fourth criteria enumerated in Chapman, i.e., that defendants had prior knowledge that lead paint was hazardous. Plaintiffs, however, presented evidence from which knowledge that lead paint was hazardous could be inferred; specifically, although Fleming denied ever reading lead paint warnings on any paint cans, he acknowledged that he owned at least 20 rental properties, and that it was his practice to clean and paint each unit between tenants. In addition, defendant Rosalyn Fleming submitted an affidavit stating that defendants painted the apartment before plaintiffs family moved into it.
In any event, CCHD informed defendants in December 1991 that peeling and chipping lead paint was present in the apartment and creating a hazardous condition to plaintiff. Defendants assert that CCHD inspected and approved their abatement work, which consisted of repainting certain areas of chipping paint on the interior and exterior of the house, and was completed by the spring of 1992, and that their daughter thereafter visited the unit on a regular basis to inspect for chipping paint. Defendants did not, however, hire an expert or attempt more thorough or durable methods of abatement. Moreover, it is undisputed that plaintiffs lead levels remained elevated through June 1995.* Under these circumstances, a question of fact exists regarding whether defendants’ abatement work and subsequent inspections were negligently performed, leading to additional exposure after defendants received notice from CCHD (see La Fountaine v Franzese, 282 AD2d 935, 936-938 [2001]).
Similarly, Supreme Court properly determined that issues of fact exist with respect to causation. Plaintiff established prima *1243 facie causation through evidence that a number of paint samples taken by CCHD from the apartment tested positive for lead, that she had chronically elevated lead levels while residing at the apartment beginning with the first time that she was tested for lead at two years of age, that her parents observed her playing in areas that tested positive for lead paint and putting her fingers in her mouth, and that her sister saw her putting paint chips in her mouth (see Juarez v Wavecrest Mgt. Team, 88 NY2d at 648; Charette v Santspree, 68 AD3d 1583, 1586 [2009]; Walton v Albany Community Dev. Agency, 279 AD2d 93, 95 [2001]). In response, defendants presented evidence that plaintiff was prone to touch and play with the ashes from her mother’s cigarettes, and that plaintiff’s father was scraping or sanding an old rowboat in the family’s backyard—where the children played— both prior and subsequent to defendants’ completion of abatement work. In addition to samples from the residence, the paint on the boat also tested positive for lead. While plaintiff provided an expert affirmation from a pediatrician who was experienced in treatment of lead paint poisoning cases and concluded that it was unlikely that the boat work could have caused plaintiff s blood lead neurotoxicity, defendants presented affidavits from a physician and neuropsychologist indicating that the seasonal fluctuations in plaintiff’s lead levels strongly suggested that paint dust from the boat and cigarette ashes were the primary sources of exposure after abatement. Under these circumstances, neither party has established entitlement to summary judgment on the issue of causation (see Cunningham v Anderson, 85 AD3d at 1373-1374).
Finally, Supreme Court did not err in denying plaintiffs request to dismiss the affirmative defenses of lack of injury and that plaintiff and her parents contributed to her injuries, or for a protective order preventing defendants from introducing evidence of the impact that socioeconomic and environmental factors had on plaintiffs behavioral problems, or cognitive and academic abilities. As we recently explained, plaintiffs request for a “protective order” amounts to “a motion in limine preventing certain evidence from being raised at trial,” and is “overbroad and would . . . prevent! ] legitimate defenses from being pursued” (Van Wert v Randall, 100 AD3d 1079, 1082 [2012]; see Robinson v Bartlett, 95 AD3d at 1535-1536; see also Cunningham v Anderson, 85 AD3d at 1374-1375). Regarding the affirmative defenses, to the extent that defendants argue that plaintiff had a duty to mitigate her damages beginning at the age of four, their argument is patently absurd. Nevertheless, while that affirmative defense should be limited, we have repeatedly held that “defendants are permitted to attempt to show *1244 that [plaintiff] later caused or exacerbated some of her injuries when she was a teenager, through actions such as” refusing to attend school and foregoing educational opportunities (Van Wert v Randall, 100 AD3d at 1081; see Robinson v Bartlett, 95 AD3d at 1534-1535; Cunningham v Anderson, 85 AD3d at 1372). Inasmuch as plaintiff failed to demonstrate that the affirmative defenses lack merit as a matter of law, she is not entitled to their dismissal (see Van Wert v Randall, 100 AD3d at 1081).
The parties’ remaining arguments have been considered and found to be lacking in merit.
Spain, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

 Plaintiff’s blood lead level peaked at 38 micrograms per deciliter (hereinafter mcg/dcl) in December 1991, and remained in the mid-to-high 20s mcg/dcl level through July 1993, before falling back to 18-23 mcg/dcl after March 1994. As we have previously noted, an elevated level is a blood lead level greater or equal to 10 mcg/dcl (see Public Health Law § 1370 [6]; Robinson v Bartlett, 95 AD3d at 1532 n 1).