12-3897-cv
Szewczuk v. Stellar 117 Garth, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of October, two thousand thirteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> DENNIS JACOBS,
> > *Circuit Judge*,
> KEVIN THOMAS DUFFY,
> > *District Judge*.[*]

_____

JOHN SZEWCZUK and JENNIFER FRIEND,
Individually and as Natural Guardians of B.A.S. and J.P.S,
minors under the age of eighteen,

> *Plaintiffs-Appellant*s,

> v.                                                                 No.12-3897-cv

STELLAR 117 GARTH, LLC, and AMANDA MANAGEMENT CORP.,
doing business as Stellar Management,

> *Defendants-Appellees*.[**]

_____

---

[*] The Honorable Kevin Thomas Duffy, of the United States District Court for the Southern District of New York, sitting by designation.

[**] The panel directs the Clerk of Court to amend the caption as provided.

*For Plaintiffs-Appellants*:    JAMES W. BADIE, Law Offices of James W. Badie, Tarrytown, NY.

*For Defendants-Appellants*:    DWIGHT A. KERN (David S. Kostus, on the brief), Segal McCambridge Singer & Mahoney, Jersey City, NJ.

Appeal from the United States District Court for the Southern District of New York (Crotty, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants John Szewczuk and Jennifer Friend, on behalf of their minor children, appeal a memorandum decision and order by the United States District Court for the Southern District of New York (Crotty, *J.*), which granted summary judgment to the defendants on plaintiffs' state law claims for constructive eviction, breach of the warranty of habitability, and negligence. The gravamen of the plaintiffs' claims was that the owners and management company of their apartment building, Defendants-Appellees Stellar 117 Garth and Amanda Management Corp. (collectively, "Stellar"), failed to remedy lead paint in the plaintiffs' apartment and that this lead paint caused their daughter's alleged neuropsychological impairments. We assume the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal.

We first consider the plaintiffs' warranty of habitability claim. Under New York law, occupants of an apartment "shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health, and safety." N.Y. Real Prop. Law § 235-b. The parties agree that the presence of exposed lead paint would constitute such a hazardous condition. However, a March 2006 report by a lead-testing company concluded that none of the lead paint was chipping or otherwise exposed at the time. The plaintiffs present no evidence—apart from speculation—that there was any exposed lead paint in their apartment or

2

the common areas of the apartment building in 2005 or 2006. Although the plaintiffs point to a

2008 report by another lead-testing company that they claim showed the existence of lead dust in

the apartment, the plaintiffs did not present this report to the district court and we cannot

consider it on appeal. We must therefore affirm the district court's grant of summary judgment

to the defendants on the warranty of habitability claim.[1] For the same reasons, we also affirm

the district court's decision on the plaintiffs' constructive eviction claim.

We also find that the plaintiffs have failed to raise a material question of fact on their tort

claim alleging that their daughter suffered injuries stemming from lead poisoning. In order to

establish such a claim under New York law, a plaintiff must demonstrate that (1) the defendant

had notice of and an opportunity to cure the hazard, (2) the child was exposed to lead paint as a

result of the defendant's actions, and (3) the child was injured as a result of lead exposure.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002); *Chapman v.

Silber*, 97 N.Y.2d 9, 15 (2001). To prove the third element, the plaintiff must submit expert

evidence on both "general causation, i.e., that . . . exposure [to lead] can cause the type of

ailments from which [the plaintiff] claims to suffer" *and* "specific causation, i.e., that . . .

exposure [to lead] actually caused [the] alleged neurological problems." *Amorgianos*, 303 F.3d

at 268. Under federal law, this expert evidence must also be sufficiently reliable. *See Daubert v.

Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). The district court did not err in finding

that the testimony by the plaintiffs' expert, Dr. Theodore Lidsky, was not sufficiently reliable to

establish general causation (we therefore need not consider the other issues raised by the parties).

Although the district court did not cite *Daubert* in its decision, the defendant clearly based its

---

[1] The 2008 report apparently shows the presence of hazardous lead dust *after* the defendants supposedly abated the lead in the apartment. If accurate, this should put defendants on notice.

3

argument on *Daubert* in its motion for summary judgment. Considered in context, it appears that the district court applied *Daubert* in finding that Dr. Lidsky's testimony was insufficient.

We will overturn a district court's determination that expert evidence was unreliable under *Daubert* only if it is "manifestly erroneous." *Amorgianos*, 303 F.3d at 268 (internal quotation marks omitted). Here, Dr. Lidsky testified that neuropsychological impairments similar to those he found in the plaintiffs' daughter "have been described as sequelae [i.e., effects] of brain dysfunction caused by early childhood exposure to lead." J. App'x at 566. He also testified that these deficits could have been caused by a blood lead level of 7 micrograms per deciliter even though, until recently, the Centers for Disease Control ("CDC") had believed that lead poisoning only occurred at blood levels above 10 micrograms per deciliter. He emphasized that the CDC has since changed its position and now believes that there may be adverse health effects for children with blood lead levels under 10 micrograms per deciliter.

However, while it is certainly *possible* that the child's impairments could have been caused by lead poisoning, Dr. Lidsky provided no reliable evidence that the specific impairments he found in the plaintiffs' daughter could have been caused by blood concentrations of lead as low as 7 micrograms per deciliter. In fact, the New York Appellate Division has already rejected a similar conclusion by Dr. Lidsky in a lead poisoning case where Lidsky did not "identify which impairments were so described [as sequelae of brain dysfunction], who so described them, the similarity of those so described to those he saw in plaintiff, and at what level of exposure to lead such impairments have been observed." *Veloz v. Refika Realty Co.*, 831 N.Y.S.2d 399, 400 (1st Dep't 2005).

Although Dr. Lidsky cites about thirty scientific articles which he argues constitute proof that the plaintiffs' daughter's deficits could have been caused by relatively low levels of lead, none of these articles—as persuasively illustrated by the defendant's expert—actually support

Dr. Lidsky's claims. Many of the articles are not peer-reviewed or discuss injuries, such as a loss of IQ, that Dr. Lidsky did not actually diagnose in the plaintiffs' daughter. Moreover, several of the articles discuss only loose associations or correlations between low blood levels of lead and certain cognitive deficits, rather than any evidence of causation. One, for example, found only that low-level lead exposure was associated with a mere 0.3 point change in SAT scores. Despite multiple opportunities, neither Dr. Lidsky nor the plaintiffs have directly tied the findings in any of these studies to their ultimate conclusion that low-level lead exposure can cause the specific type of injuries at issue here. Under these circumstances, it was not "manifestly erroneous" for the district court to conclude that Dr. Lidsky's expert opinions were unreliable and unsupported by sufficient scientific evidence. *See Amorgianos*, 303 F.3d at 269.

We do not imply, however, that a plaintiff would never be able to prove that a relatively low lead concentration caused brain injuries. The CDC's recent policy shift implies that there is reason to be concerned about even low-level exposure to lead, and, for all we know, there may already be sufficient scientific evidence to support expert testimony along these lines. We merely hold that the district court here did not abuse its discretion in determining that Dr. Lidsky failed to provide sufficient scientific support for his conclusion in this particular case.

We have considered the plaintiffs' remaining arguments on these issues and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

5