Garry, J.
Appeal from an order of the Supreme Court (McNamara, J.), entered March 28, 2013 in Albany County, which, among other things, granted defendant’s motion for summary judgment dismissing the complaint.
In 1987, defendant purchased a three-unit residential apartment building in the City of Albany. Plaintiff — then an infant— moved into the building’s basement apartment with his family in 1989. Thereafter, a blood test revealed that plaintiffs older brother had elevated lead levels. In October 1990, the Albany *1275 County Department of Health (hereinafter ACDOH) inspected the apartment and found a “mild” lead hazard in the bathroom. The ACDOH inspector notified defendant of this hazard and the necessary corrective measures and, upon returning to the apartment approximately three weeks later, determined that all required abatement work had been completed. However, plaintiff’s lead level was found to be elevated in January 1991. As a result, the apartment was reinspected in February 1991, and the ACDOH inspector determined that no lead hazard existed. The family moved out of the apartment later in 1991 or early in 1992.[1]
Plaintiff was later diagnosed with impairments that he contends were caused by lead exposure and, in 2010, he commenced this action alleging that defendant negligently inspected and maintained the property and negligently abated the lead hazard. Following joinder of issue, defendant moved for summary judgment dismissing the complaint, and plaintiff cross-moved for partial summary judgment as to liability and for other relief. Supreme Court found that plaintiff had failed to establish triable issues of fact as to defendant’s notice of the existence of a lead hazard, granted defendant’s motion and denied the cross motion. Plaintiff appeals.
To hold a landlord liable for injuries caused by a defective condition, “ ‘the plaintiff must establish that the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected’ ” (Robinson v Bartlett, 95 AD3d 1531, 1533 [2012], quoting Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 646 [1996]; accord Hines v Double D & S Realty Mgt. Corp., 106 AD3d 1171, 1172 [2013], lv denied 22 NY3d 852 [2013]). Defendant claims that he had neither constructive nor actual notice of the lead hazard before October 1990, while plaintiff contends that defendant should be charged with constructive notice. To make such a showing, plaintiff must demonstrate that defendant “(1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment” (Chapman v Silber, 97 NY2d 9, 15 [2001]; accord Van Wert v Randall, 100 AD3d 1079, 1080 [2012]). Here, defendant *1276 acknowledged that he knew that the building was old, was aware that young children lived in the basement apartment, had the right to enter the apartment to make repairs, and did so. However, he testified that he “didn’t know anything about lead poisoning” before the October 1990 inspection, did not remember peeling or chipping paint in the apartment and did not know that lead hazards had twice been identified in the building before he purchased it.[2] This testimony was sufficient to establish on a prima facie basis that defendant did not have constructive notice of a lead hazard before October 1990, shifting the burden to plaintiff to establish triable issues of fact (see Hines v Double D & S Realty Mgt. Corp., 106 AD3d at 1174).
In this regard, plaintiff relies upon defendant’s friendly relationship with the building’s prior owner, whom defendant had known for many years and with whom, among other things, defendant had jointly purchased another building. However, the record includes no evidence that the prior owner told defendant about the building’s previous lead problems or that defendant otherwise had an opportunity to learn about them; the mere fact that they were acquainted does not give rise to a triable issue of fact. Nor was it shown that defendant — who testified that his education and reading skills were limited — was sophisticated in the ownership and maintenance of rental properties or otherwise experienced in areas that should have familiarized him with lead poisoning issues (compare Derr v Fleming, 106 AD3d 1240, 1242 [2013]). Accordingly, plaintiff failed to establish the existence of a triable issue of fact as to whether defendant had constructive notice of a lead hazard before the October 1990 inspection.
Defendant indisputably had actual notice of a lead hazard in the apartment’s bathroom after the October 1990 inspection. However, we find no evidence in the record that this hazard continued thereafter “for such a period of time that, in the exercise of reasonable care, it should have been corrected” (Juarez v Wavecrest Mgt. Team, 88 NY2d at 646). The dangerous condition in the bathroom was corrected to ACDOH’s satisfaction within three weeks, and there is no evidence that ACDOH’s instructions as to the procedures used were not followed, or that the abatement was otherwise negligently performed (compare Haggray v Malek, 21 AD3d 683, 685 [2005]; La Fountaine v Franzese, 282 AD2d 935, 937-938 [2001]). On the contrary, ACDOH initially determined that the hazard had *1277 been properly abated and, thereafter, upon reinspecting the apartment in January 1991, certified that no lead hazard existed in the apartment.
Nothing in the record indicates that any lead hazard recurred in the apartment thereafter. ACDOH records reveal that plaintiff’s lead levels showed a sharp decrease after January 1991, followed by a more gradual decrease thereafter. ACDOH nursing records describe a home visit in February 1991 in which the apartment was inspected, apparently by a visiting nurse, and “no chipping [was] noted.” The records further document the abatement of the prior hazard in November 1990, noting that this was “only a mild [lead] source.” Thereafter, ACDOH continued to monitor plaintiff’s lead levels for several years without raising further concerns about lead hazards in the apartment or recommending reinspection (compare La Fountaine v Franzese, 282 AD2d at 936).
The record does not support plaintiff’s claim that ACDOH warned defendant that lead hazards could recur after abatement;[3] in any event, contrary to plaintiff’s- argument, the possibility that the hazard could recur does not constitute evidence that it did. The record reveals that defendant was directed to correct various code violations in the apartment, but none of these involved lead hazards, and only one involved paint — that is, a direction to scrape and paint a bedroom ceiling where ACDOH inspection records had not identified the presence of lead paint.[4] Under these circumstances, nothing but speculation supports plaintiffs claims that defendant had constructive notice of a lead hazard before October 1990, negligently abated the hazard upon its discovery, or negligently permitted a hazard to recur or continue to exist thereafter. Thus, Supreme Court properly granted summary judgment dismissing the complaint (see Hines v Double D & S Realty Mgt. Corp., 106 AD3d at 1174-1175; Stover v Robilotto, 277 AD2d 801, 803-804 [2000], affd 97 NY2d 9 [2001]). The parties’ remaining contentions are rendered academic by this determination.
Peters, EJ, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.

. Plaintiffs mother testified that the family moved in the spring or summer of 1991, but documents in the record suggest that the move may not have occurred until the following March.

. The record reveals that lead hazards had been discovered in another apartment in the building in 1978 and 1985 and were rectified to ACDOH’s satisfaction on both occasions.

. Records of the abatement information and instructions given by ACDOH to defendant following the October 1990 inspection include no warnings regarding recurrence. Plaintiff submitted testimony given by the ACDOH inspector in two other lead poisoning actions to the effect that it was the inspector’s usual practice to warn landlords verbally that lead problems could recur, but no sworn affidavit or other record evidence demonstrates that this practice was followed as to defendant.

. Notably, as this violation occurred in late 1991, it was either after plaintiff had moved out — by his mother’s testimony — or shortly before he did so.