Uᴛɪᴄᴀ Mᴜᴛᴜᴀʟ Iɴsᴜʀᴀɴᴄᴇ Coᴍᴘᴀɴʏ, as Subrogee of Ares Printing & Packaging Corp., Appellant, v Bʀᴏᴏᴋʟʏɴ Nᴀᴠʏ Yᴀʀᴅ Dᴇᴠᴇʟᴏᴘᴍᴇɴᴛ Cᴏʀᴘ. et al., Respondents. [15 NYS3d 136]—

In a subrogation action to recover insurance benefits paid to the plaintiff's insured for damages for injury to property and breach of contract, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Graham, J.), entered May 8, 2013, which, upon a jury verdict, is in favor of the defendants Brooklyn Navy Yard Development Corp. and City of New York and against it dismissing the complaint insofar as asserted against those defendants.

Ordered that the judgment is affirmed, with costs.

The plaintiff insurance carrier is the subrogee of Ares Printing & Packaging Corp., which rented premises in a building in the Brooklyn Navy Yard. The building was owned by the City of New York, and maintained by the defendant Brooklyn Navy Yard Development Corp. (hereinafter Brooklyn Navy Yard),

since 1971. In August 2003, a water pipe broke on the premises, causing a flood that resulted in property damage. The pipe failure occurred because a copper pipe had been placed in a weight-bearing cylinder composed of iron, commonly known as bushing, at a junction between pipes, resulting in corrosion.

The Supreme Court had previously awarded summary judgment to the City and Brooklyn Navy Yard on the ground that they were out-of-possession landlords with no obligation to maintain the plumbing. On a prior appeal (*see Utica Mut. Ins. Co. v Brooklyn Navy Yard Dev. Corp.*, 83 AD3d 817 [2011]), this Court reversed that order, explaining that out-of-possession landlords could be liable if they created the subject defect, and that the City and Brooklyn Navy Yard failed to establish, prima facie, that they did not create the defect. However, at trial, the status of the City and Brooklyn Navy Yard as out-of-possession landlords was called into question by evidence that the staff of Brooklyn Navy Yard performed minor plumbing repairs on request, and was responsible for upgrading and maintaining various systems.

To establish that the City and Brooklyn Navy Yard caused the defect, the plaintiff adduced expert testimony at trial that the pipe took 10 to 20 years to corrode and break and, therefore, the plaintiff contended that it could be inferred that Brooklyn Navy Yard created the condition subsequent to when it took over the site in 1971. A defense expert testified that the defect may have predated 1971, explaining that it could have taken as many as 50 years for the pipe to corrode and break. On cross-examination, the plaintiff elicited testimony from that expert that, by the 1980s, plumbers knew that it was not appropriate to mix metals in plumbing. The plaintiff's counsel argued that the City and Brooklyn Navy Yard knew that this practice was wrong for 18 years and did nothing to correct it, but the defendants objected to the interposition of that theory of liability. The Supreme Court did not allow the plaintiff to proceed further on that theory in the course of cross-examination. However, it still allowed that theory to go to the jury. Thereafter, the jury rendered a verdict in favor of the City and Brooklyn Navy Yard.

On appeal, the plaintiff contends that the Supreme Court erred in preventing it from pursuing its theory that the defendants were liable because they retained control of the premises, and had actual or constructive notice of the condition of the pipes.

Contrary to the plaintiff's contention, the Supreme Court properly limited the extent to which it was permitted to

introduce a new theory in the case during the cross-examination of a defense witness (*see generally Hubbard v City of New York*, 84 AD3d 1313 [2011]; *Thompson v New York City Hous. Auth.*, 212 AD2d 775 [1995]). In any event, the new theory of liability, which was that the defendants had actual or constructive notice of a latent, dangerous condition that ultimately caused damage to the subject property, was not supported by the evidence that had already been adduced. Generally, to establish constructive notice, a defect must be visible and apparent, and it must exist for a sufficient length of time prior to an accident to permit a defendant's employees to discover and remedy it (*see Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]; *Derise v Jaak 773, Inc.*, 127 AD3d 1011 [2015]). A general knowledge of a particular type of risk generally does not create a duty to test for, or remedy it (*see Chapman v Silber*, 97 NY2d 9, 21 [2001]; *Piacquadio v Recine Realty Corp.*, 84 NY2d 967 [1994]; *Mormile v Jamestown Mgt. Corp.*, 71 AD3d 748 [2010]). Absent actual or constructive notice of a latent defect, there was no duty to inspect the plumbing system for signs of that defect (*see Giaccio v 179 Tenants Corp.* 45 AD3d 454 [2007]). Since the evidence did not support the theory that the defendants had actual or constructive notice of a latent, dangerous condition, the Supreme Court properly limited the extent to which the jury was permitted to consider those theories of liability.

Accordingly, the judgment in favor of the City and Brooklyn Navy Yard must be affirmed. Eng, P.J., Hall, Hinds-Radix and LaSalle, JJ., concur.