■ MARDI JOHN, by the Parent and Natural Guardian, CHERYL KENDALL, Respondent, v DANIEL CASSIDY, Defendant, and PAUL KLEINDIENST, Appellant. DANIEL CASSIDY et al., Third-Party Plaintiffs, v DANIEL A. MESSINA et al., Third-Party Defendants. [57 NYS3d 567]—

Appeal from an order of the Supreme Court, Cattaraugus County (Michael L. Nenno, A.J.), entered April 11, 2016. The order, among other things, denied that part of the motion of defendants seeking summary judgment dismissing the complaint against defendant-third-party plaintiff Paul Kleindienst.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: Infant plaintiff, by her parent and natural guardian, commenced this action seeking damages for injuries she allegedly sustained as a result of her exposure to lead paint while residing in an apartment in a building allegedly owned by defendants-third-party plaintiffs Daniel Cassidy and Paul Kleindienst (defendants). Defendants jointly moved for, inter alia, summary judgment dismissing the complaint against them. Supreme Court granted the motion in part by awarding summary judgment to Cassidy and dismissing the complaint against him. On this appeal, Kleindienst contends that the court erred in denying that part of the motion seeking summary judgment dismissing the complaint against him. We reject that contention.

It is well settled that "[l]iability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of [the] premises . . . The existence of one or more of these elements is sufficient to give rise to a duty of care. Where none is present, a party cannot be held liable for injury caused by the defective or dangerous condition of the property" (*Clifford v Woodlawn Volunteer Fire Co., Inc.*, 31 AD3d 1102, 1103 [2006] [internal quotation marks omitted]). "It has been held uniformly that control is the test which measures generally the responsibility in tort of the owner of real property"

(*Ritto v Goldberg*, 27 NY2d 887, 889 [1970]). It is equally well settled that, "[i]n order for a landlord to be held liable for a lead paint condition, it must be established that the landlord had actual or constructive notice of the hazardous condition and a reasonable opportunity to remedy it, but failed to do so" (*Spain v Holl*, 115 AD3d 1368, 1369 [2014]; *see generally Chapman v Silber*, 97 NY2d 9, 19-20 [2001]). A plaintiff can establish that the landlord had constructive notice of a hazardous lead paint condition by showing that the landlord: "(1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment" (*Chapman*, 97 NY2d at 15).

Inasmuch as this was defendants' motion for summary judgment, Kleindienst had the burden of establishing either that he did not occupy, own, control, or have a special use of the property (*see generally Butler v Rafferty*, 100 NY2d 265, 270 [2003]; *Basso v Miller*, 40 NY2d 233, 241 [1976]), or that he "had no actual or constructive notice of the hazardous lead paint condition prior to an inspection conducted by the [Cattaraugus] County Department of Health" (*Stokely v Wright*, 111 AD3d 1382, 1382 [2013]; *see generally Chapman*, 97 NY2d at 15). "The factors set forth in *Chapman* . . . remain the bases for determining whether a landlord knew or should have known of the existence of a hazardous lead paint condition and thus may be held liable in a lead paint case" (*Watson v Priore*, 104 AD3d 1304, 1305 [2013], *lv dismissed in part and denied in part* 21 NY3d 1052 [2013]; *see Sykes v Roth*, 101 AD3d 1673, 1674 [2012]).

Contrary to Kleindienst's contention, he failed to establish as a matter of law that he did not own or control the building in which infant plaintiff resided at all relevant times. In 1990, defendants entered into an installment sales contract (first contract) pursuant to which Cassidy would retain title to the property but would relinquish possession of the property to Kleindienst, who would make installment payments until 1998, at which time Cassidy would transfer a deed to Kleindienst "conveying good and marketable title . . . so as to convey to [Kleindienst] the fee simple of the premises." It is undisputed that Kleindienst took possession and control of the property at that time. Infant plaintiff's mother (mother), who at that time had two other minor children, thereafter entered into a rental agreement with Kleindienst and moved into an apartment in

the building. Infant plaintiff was born in August of 1993, while her mother was still residing in the building. In March 1994, Kleindienst entered into a second installment sales contract with third-party defendants (second contract), which was virtually identical in its terms to the first contract. In August 1994, infant plaintiff was found to have elevated lead levels in her blood and, by January 1995, those lead levels had increased. The mother and her family moved out of the apartment.

Inasmuch as infant plaintiff's elevated lead levels were not discovered until August 1994, months after Kleindienst entered into the second contract, he contends that he did not control or own the property at the time infant plaintiff was injured. Although we agree with Kleindienst that a nonassignment clause in the first contract did not render the second contract void inasmuch as the nonassignment clause "did not provide that any [future] assignment would be void or invalid" (*Almeida Oil Co., Inc. v Singer Holding Corp.*, 51 AD3d 604, 606 [2008]; *cf. Singer Asset Fin. Co. v Bachus*, 294 AD2d 818, 820 [2002], *lv denied* 98 NY2d 615 [2002]), we nevertheless conclude that defendants' own submissions raise triable issues of fact whether Kleindienst owned or controlled the premises.

Upon execution of an installment contract, like those at issue on this appeal, "the vendee acquires equitable title . . . The vendor holds the legal title in trust for the vendee and has an equitable lien for the payment of the purchase price" (*Bean v Walker*, 95 AD2d 70, 72 [1983]). Thus, "the vendee in possession, for all practical purposes, is the owner of the property with all the rights of an owner subject only to the terms of the contract" (*id.*). Nevertheless, "[t]he fact that [the vendor] ha[s] relinquished possession of the property in favor of [the vendee does] not extinguish [the vendor's] status as fee owner[ ] of the property" (*Nephew v Barcomb*, 260 AD2d 821, 822 [1999]). Moreover, in assessing an out-of-possession landowner's duty in tort, it remains appropriate to "look not only to the terms of the agreement but to the parties' course of conduct—including, but not limited to, the landowner's ability to access the premises—to determine whether the landowner in fact surrendered control over the property such that the landowner's duty is extinguished as a matter of law" (*Gronski v County of Monroe*, 18 NY3d 374, 380-381 [2011], *rearg denied* 19 NY3d 856 [2012]).

Kleindienst does not dispute his ownership interest and control over the building between execution of the first and second contracts. Rather, he contends that he neither owned nor controlled the property following execution of the second

contract. While we agree with Kleindienst that cases analyzing the status of an owner under the liberal definition of "owner" under the Labor Law statutes are distinguishable (*see Custer v Jordan*, 107 AD3d 1555, 1556-1557 [2013]), we nevertheless conclude that the evidence submitted by defendants raises triable issues of fact whether Kleindienst retained sufficient control over the property after the second contract to be liable for the dangerous lead paint condition in the mother's apartment (*cf. Conneely v Herzog*, 33 AD3d 1065, 1066 [2006]; *see generally Gronski*, 18 NY3d at 380-382). Indeed, Kleindienst even testified that "between 1990 and 1995," i.e., after execution of the second contract, he had a right to enter the property and to make all repairs. Defendants also submitted the mother's deposition testimony in which she stated that Kleindienst entered her property to replace windows during the summer of 1994, i.e., after the second contract was executed.

Even assuming, arguendo, that Kleindienst established as a matter of law that he owed no duty to infant plaintiff following execution of the second contract, we conclude that infant plaintiff raised triable issues of fact whether her ingestion of lead occurred during the time period before the second contract was executed. The evidence submitted by both defendants and infant plaintiff establish that infant plaintiff was observed with paint chips in her mouth and with her mouth on the apartment's windowsills during that time period. Infant plaintiff's expert opined that her injuries were caused by her significant exposure to lead (*see Rodrigues v Lesser*, 136 AD3d 1322, 1324 [2016]). Inasmuch as infant plaintiff "had exclusively resided in that apartment at the time that [s]he tested positive for elevated" lead levels (*Wynn v T.R.I.P. Redevelopment Assoc.*, 296 AD2d 176, 184 [2002]), there was evidentiary support for the opinion of infant plaintiff's expert that she had been exposed to and had ingested lead paint during the time period before the second contract was executed (*see Charette v Santspree*, 68 AD3d 1583, 1585-1586 [2009]; *cf. Davis v Brzostowski*, 133 AD3d 1371, 1372 [2015]). " '[T]he admissibility and scope of [expert] testimony is addressed to the trial court's sound discretion' " (*Robinson v Bartlett*, 95 AD3d 1531, 1536 [2012]), and we reject Kleindienst's contention that the court should have disregarded the expert's opinion on the ground that it was based entirely on conjecture and speculation.

Finally, we conclude that defendants failed to establish as a matter of law that Kleindienst lacked constructive notice of the lead paint condition (*see generally Chapman*, 97 NY2d at 15).

It is undisputed that Kleindienst was aware that young children were residing with the mother in the apartment and, as noted above, defendants' own submissions raise triable issues of fact whether Kleindienst retained a right of entry and assumed a duty to make repairs. In addition, defendants' own submissions raise triable issues of fact whether Kleindienst knew that the building was constructed at a time before lead-based interior paint was banned (see *Jackson v Brown*, 26 AD3d 804, 805 [2006]), was aware that paint was peeling on the premises (see *Rodrigues*, 136 AD3d at 1324), and knew the hazards of lead-based paint to young children (see *Derr v Fleming*, 106 AD3d 1240, 1242 [2013]). Thus, the burden never shifted to infant plaintiff to raise triable issues of fact (see *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Present—Whalen, P.J., Lindley, DeJoseph, NeMoyer and Curran, JJ.