■ GLENN POMEROY et al., Respondents, v TERRENCE GELBER, Appellant. [985 NYS2d 183]—

Egan Jr., J. Appeal from an order of the Supreme Court (Lambert, J.), entered December 5, 2012 in Delaware County, which denied defendant's motion for summary judgment dismissing the complaint.

At approximately 10:00 a.m. on March 8, 2011, plaintiff Glenn Pomeroy allegedly slipped and fell while descending the front stairs of his next-door neighbors' single-family residence located on East Street in the Town of Walton, Delaware County. The house in question was owned by defendant, who lived out of town, and rented by Kellie Bush and Gary Tompkins, who resided there with their children. On the morning in question, Pomeroy went to speak with Bush and Tompkins and ascended the three steps to the residence without incident. As he was leaving the residence, however, Pomeroy allegedly slipped on a patch of black ice—estimated by him to measure approximately 18 inches in length—located on the second step, causing him to land on the sidewalk and, among other things, fracture his left ankle.

Pomeroy and his wife, derivatively, thereafter commenced this negligence action against defendant seeking to recover for the injuries sustained. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint contending that, as an out-of-possession landlord, he bore no responsibility for Pomeroy's alleged injuries and, in any event,

---

he lacked actual or constructive notice of any allegedly dangerous condition existing upon the property. Plaintiffs opposed the motion, arguing that triable issue of facts existed as to whether defendant had assumed responsibility for snow and ice removal at the premises and, further, whether the ice had existed for a sufficient period of time to permit defendant to discover and remedy it. Supreme Court denied the motion, finding that the parties' conflicting submissions presented numerous questions of fact, and this appeal by defendant ensued.

We affirm. "As a general rule, an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant. Exceptions to this rule include situations where the landlord retains control of the premises, has specifically contracted to repair or maintain the property, has through a course of conduct assumed a responsibility to maintain or repair the property or has affirmatively created a dangerous condition" thereon (*Vanderlyn v Daly*, 97 AD3d 1053, 1055 [2012], *lv denied* 20 NY3d 853 [2012] [internal quotation marks and citations omitted]; *see Patrick v Grimaldi*, 100 AD3d 1320, 1320-1321 [2012]; *Bush v Mechanicville Warehouse Corp.*, 69 AD3d 1207, 1207 [2010]). That said, "without notice of a specific dangerous condition, an out-of-possession landlord cannot be faulted for failing to repair [or otherwise rectify] it" (*Chapman v Silber*, 97 NY2d 9, 20 [2001]). Accordingly, "[t]he burden is on the plaintiff to prove actual or constructive notice and a reasonable opportunity to repair [or remedy] the dangerous condition" (*Oates v Iacovelli*, 80 AD3d 1059, 1060 [2011]).

In support of his motion for summary judgment, defendant testified that he delegated management of his various rental properties—including the residence in which Bush and Tompkins resided—to a local realty company, whose agent, Debra Holt, was responsible for locating tenants, collecting rents and "call[ing] a handyman if there is a complaint about anything." Defendant further testified that Bush and Tompkins—as tenants—were "responsible for the use and maintenance and upkeep" of the premises, including all snow and ice removal, and Bush and Tompkins, in turn, conceded that they had been advised by Holt that they were responsible for all snow removal and salting operations at their residence. Additionally, defendant testified that any inspections of the leased premises would have occurred between occupancies and that Holt most likely would have been the person to perform such inspections, stating that "[s]he takes care of pretty much everything for me." Defendant acknowledged, however, that there was no written

lease governing Bush and Tompkins' use and occupancy of the premises (or responsibility for snow and ice removal), nor was there a written property management agreement governing Holt's responsibilities with respect thereto, and defendant admitted that he previously had undertaken certain repairs at the premises.

Even assuming that the foregoing proof was sufficient to discharge defendant's initial burden on the motion for summary judgment as to his status as an out-of-possession landlord, Holt's examination before trial testimony—submitted by plaintiffs in opposition to defendant's motion—was sufficient to raise a question of fact on this point. Specifically, Holt testified that if a tenant called with a complaint, she would contact defendant, who "ha[d] a handyman that [took] care of the properties." According to Holt, she "never hired anybody" to perform repairs at defendant's various properties. As for snow and ice removal at the premises in question, Holt acknowledged that Bush and Tompkins were responsible for shoveling and salting, but stated that if Bush and Tompkins failed to fulfill their obligations in this regard, "[defendant] would have called somebody and we would have had it taken care of." As Holt succinctly put it, "[i]f a tenant couldn't do it, then [defendant] would." Such testimony, in our view, is sufficient to raise a question of fact as to whether defendant, through a course of conduct, assumed a responsibility to maintain the property—particularly with respect to snow and ice removal—and retained a right to reenter in order to do so.

As to the issue of notice, the record reflects that defendant satisfied his initial burden of demonstrating that he lacked actual or constructive notice of the alleged dangerous condition. Notably, defendant testified that he had not received any prior complaints regarding either the steps in general or any snow or ice accumulation thereon, and both Bush and Tompkins testified that they did not register any complaints with respect thereto. Additionally, Bush testified that "the steps were 95 percent dry" and "bare" on the morning of Pomeroy's alleged accident, and Pomeroy, who ascended the steps without any difficulty, acknowledged that he did not see the black ice until after he fell.

In opposition to defendant's motion, however, plaintiffs tendered the affidavit of a meteorologist who, after reviewing the recent snowfall data, weather conditions and temperatures for the two days preceding plaintiff's fall, opined "with a reasonable degree of certainty that the icy patch upon which . . . Pomeroy [fell] on the morning of March 8, 2011 existed no later

than the midday hours of March 6, 2011 and remained continuously thereafter to the time that he fell on March 8, 2011 at approximately 10 A.M.''* Additionally, despite Bush's and Tompkins' respective testimony that the steps were essentially clear at the time that Pomeroy fell, each nonetheless acknowledged that there was some form of precipitation present—with Tompkins testifying that there was "a little bit of frost" on the top step and Bush testifying that there was a small amount of "water slush" on the second step. Such proof, viewed in the light most favorable to plaintiffs (*see Beckerleg v Tractor Supply Co.*, 107 AD3d 1208, 1209 [2013]), was sufficient to raise a question of fact as to whether the icy condition that allegedly precipitated Pomeroy's fall "was visible and apparent and existed for a sufficient period of time prior to the accident to permit . . . defendant[ ] to discover it and take corrective action" (*Marino v A.G. Props. of Kingston, LLC*, 85 AD3d 1429, 1430 [2011]; *see Rodriguez v Binghamton Hous. Auth.*, 101 AD3d 1222, 1224 [2012]; *compare Decker v Schildt*, 100 AD3d 1339, 1341 [2012]). Accordingly, in light of the various questions of fact presented by this record, Supreme Court properly denied defendant's motion for summary judgment dismissing the complaint.

Stein, J.P., McCarthy and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

---

* The meteorological data relied upon by plaintiffs' expert accompanied this affidavit. Notably, this data directly contradicted Bush's assertion that the last snowfall prior to Pomeroy's accident occurred at the end of February.