Rose v Kozak (2019 NY Slip Op 06559)





Rose v Kozak


2019 NY Slip Op 06559


Decided on September 12, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 12, 2019

528280

[*1]Scott Rose, Respondent,
v
Margaret Kozak, Appellant.

Calendar Date: August 21, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


Mark D. Goris, Cazenovia, for appellant.
The Stanley Law Office, LLP, Syracuse (Thomas P. Welch of counsel), for respondent.



Mulvey, J.
Appeal from an order of the Supreme Court (Lebous, J.), entered August 2, 2018 in Broome County, which denied defendant's motion for summary judgment dismissing the complaint.
Defendant solely owns a house that she rents to plaintiff. Defendant and her sister own the house across the street, which they also rent out. On a winter night, after completing a visit with his neighbor in the rental house across the street, plaintiff allegedly slipped and fell on a slate walkway leading from the back of the house to the road or driveway. The walkway was installed by a previous tenant and runs adjacent to long concrete slabs that are positioned like gradual steps, which had previously constituted the only established path to the back of the house. According to plaintiff's deposition testimony, the slippery condition that caused him to fall was a quarter-inch of ice on the slate walkway. Plaintiff commenced this negligence action against defendant to recover damages for personal injuries. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint. Supreme Court, finding that defendant failed to meet her initial burden, denied the motion. Defendant appeals.
Supreme Court erred in denying defendant's motion for summary judgment dismissing the complaint. "As a general rule, an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant. Exceptions to this rule include situations where the landlord retains control of the premises, has specifically contracted to repair or maintain the property, has through a course of conduct assumed a responsibility to maintain or repair the property or has affirmatively created a dangerous condition thereon" (Pomeroy v Gelber, 117 AD3d 1161, 1162 [2014] [internal quotation marks and citations omitted]; accord McLaughlin v 22 New Scotland Ave., LLC, 132 AD3d 1190, 1192 [2015]; see Whittington v Champlain Ctr. N. LLC, 123 AD3d 1253, 1254 [2014]; Vanderlyn v Daly, 97 AD3d 1053, 1055 [2012], lv denied 20 NY3d 853 [2012]). "[W]hen a landowner and one in actual possession have committed their rights and obligations with regard to the property to a writing, [courts] look not only to the terms of the agreement but to the parties' course of conduct . . . to determine whether the landowner in fact surrendered control over the property such that the landowner's duty is extinguished as a matter of law" (Gronski v County of Monroe, 18 NY3d 374, 380-381 [2011]; see Contreras v Randi's Enter., LLC, 126 AD3d 1199, 1199 [2015]). However, the fact that a landlord "retain[s] the right to visit the premises, or even to approve alterations, additions or improvements, is insufficient to establish the requisite degree of control necessary for the imposition of liability with respect to an out-of-possession landlord" (Grady v Hoffman, 63 AD3d 1266, 1268 [2009] [internal quotation marks and citations omitted]; see Whittington v Champlain Ctr. N. LLC, 123 AD3d at 1254; Wayman v Roy Stanley, Inc., 122 AD3d 1119, 1120 [2014]).
In any event, "without notice of a specific dangerous condition, an out-of-possession landlord cannot be faulted for failing to repair or otherwise rectify it" (Pomeroy v Gelber, 117 AD3d at 1162 [internal quotations marks, brackets and citation omitted]; see Whittington v Champlain Ctr. N. LLC, 123 AD3d at 1254). "Accordingly, the [ultimate] burden is on the plaintiff to prove actual or constructive notice and a reasonable opportunity to repair or remedy the dangerous condition" (Pomeroy v Gelber, 117 AD3d at 1162 [internal quotations marks, brackets and citation omitted]). "In order to demonstrate constructive notice, there must be a showing that the condition was visible and apparent and existed for a sufficient period of time prior to the accident to permit [the] defendant[] to discover it and take corrective action" (Mokszki v Pratt, 13 AD3d 709, 710 [2004] [internal quotation marks and citation omitted]; see Murphy v Hometown Real Estate, 132 AD3d 1126, 1127 [2015]).
In support of her motion, defendant submitted the parties' deposition testimony, photographs and the lease for the premises. Pursuant to the lease, the tenant must "keep the grounds neat and clean" and the property in good repair, although the tenant is not responsible for ordinary wear and damage by the elements. Upon a tenant's default, the landlord reserved the right to make repairs and charge the tenant for them. The landlord had the right to enter the premises to examine the property and make repairs or alterations. No provision of the lease explicitly addresses responsibility for snow removal. As for the course of conduct (see Gronski v County of Monroe, 18 NY3d at 380-381), defendant testified that her tenants fixed any minor problems, she only went to the property if notified of a major problem, in such a situation she would hire someone to fix the problem, she never provided snow removal services and she understood the lease provision concerning the grounds to mean that the tenants were responsible for snow removal. Plaintiff, who also rented from defendant but without a lease, testified that he generally fixed anything that went wrong in his house unless it was major, defendant came to his property less than once a year, he had never seen her perform work on the property, and he and the tenants across the street mowed their own lawns and cleared the snow from their respective properties.
Defendant met her burden to show that she is an out-of-possession landlord. Even though no lease provision directly governed the parties' respective responsibilities to remove snow and ice, plaintiff's and defendant's testimony shows there is no indication that defendant assumed an obligation to do so, either contractually or through a course of conduct. Despite defendant's right under the lease to enter the premises, the record established that defendant did not retain a sufficient degree of control over the premises to impose liability; the record demonstrates that she only retained responsibility for major repairs, such as to a furnace, water heater or well pump (see Whittington v Champlain Ctr. N. LLC, 123 AD3d at 1254; Grady v Hoffman, 63 AD3d at 1268). 
Defendant further met her burden of establishing that she did not have actual or constructive notice of any problem with the walkway. Plaintiff concedes the lack of actual notice. Defendant testified that she never received complaints regarding the walkway or problems with snow and ice, and the record does not indicate that she had personally visited the property in the years prior to the accident. Plaintiff testified that he never complained to defendant about anything regarding the premises. Accordingly, defendant met her initial burden of establishing that she was an out-of-possession landlord with no actual or constructive notice, shifting the burden to plaintiff to demonstrate a triable issue of fact as to control and notice.
In response to defendant's motion, plaintiff raises exceptions to the general rule releasing the out-of-possession landlord from liability because defendant did not remember if she granted permission to the previous tenant or paid for his installation of the walkway — such that she could be found to have contracted for the maintenance of the property or affirmatively created the condition — and regulatory violations existed on the property. These arguments fail because, to impose liability, the repairs and maintenance of the property undertaken by the owner must result in a defect that caused the injury or the landlord must have affirmatively created the dangerous condition (see Pomeroy v Gelber, 117 AD3d at 1162). On the motion, plaintiff tried to demonstrate that the design and construction of the walkway created a dangerous condition.
The regulations cited by plaintiff for the first time on this motion do not appear to apply. Plaintiff's expert provided conclusory statements regarding the applicability of certain standards or regulations without any support therefor. His affidavit does not state that he ever visited the site of the accident but, instead, indicates that he rendered his opinions after reviewing the pleadings, deposition transcripts and photographs, without taking or receiving any measurements. The expert cited regulations requiring handrails and guardrails on a walking surface that is more than 30 inches above the ground (see New York State Property Maintenance Code § 306.1 [2010]) and that a ramp's surface be constructed of proper material and with securely attached slip-resistant material (see New York State Building Code §§ 1010.7, 1010.7.1 [2010]; see also ASTM Standard F1637-09 § 4.1.3). The photographs show that the walkway is at ground level. Thus, the requirement for handrails and guardrails is inapplicable, and there is no support for the expert's conclusion that the walkway would constitute a ramp as defined by the regulations (see Brown v BT-Newyo, LLC, 93 AD3d 1138, 1139 [2012], lv denied 19 NY3d 815 [2012]; compare Sanchez v Irun, 83 AD3d 611, 612 [2011]).[FN1]
Although defendant's testimony may create a question of fact regarding whether she could be held to have affirmatively created the design of the walkway, that design is irrelevant as it did not cause plaintiff's injury. The condition that caused plaintiff's fall — according to plaintiff's testimony, his bill of particulars and his counsel's question to defendant at her deposition (asking what efforts defendant made after the accident to remedy the "condition" of the walkway, which was clarified to mean "the ice") — was ice. Nothing in the record demonstrates how long the icy condition existed so as to provide constructive notice, especially to an out-of-possession landlord. As defendant met her burden of establishing her entitlement to judgment as a matter of law, and plaintiff then failed "to produce evidentiary proof in admissible form sufficient to establish the existence of [a] material issue[] of fact which require[s] a trial of the action" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]), defendant was entitled to summary judgment dismissing the complaint.
Garry, P.J., Egan Jr., Clark and Pritzker, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, motion granted and complaint dismissed.



Footnotes

Footnote 1: Though not directly mentioned in the expert's affidavit, for purposes of the cited regulations, a ramp is defined as "[a] walking surface that has a running slope steeper than one unit vertical in 20 units horizontal (5-percent slope)" (New York State Building Code § 1002.1). The record does not contain any measurements of the walkway or its slope. Rather, the expert reached conclusions based on his interpretation of "[t]he slope, as demonstrated by the photographs," and cites the slope requirements in Labor Law § 270 (4), a statutory provision regulating ramps in factories, which does not apply here.