Harkins v Tuma (2020 NY Slip Op 02145)





Harkins v Tuma


2020 NY Slip Op 02145


Decided on April 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 2, 2020

528677

[*1]Rebecca Harkins, Appellant,
v
Garry J. Tuma et al., Respondents.

Calendar Date: February 13, 2020

Before: Garry, P.J., Lynch, Mulvey, Aarons and Reynolds Fitzgerald, JJ.


Dall Vechia & Kraft, PC, Kingston (John T. Dall Vechia Jr. of counsel), for appellant.
Cook, Netter, Cloonan, Kurtz & Murphy, PC, Kingston (Michael T. Cook of counsel), for respondents.



Mulvey, J.
Appeal from an order of the Supreme Court (Cahill, J.), entered February 22, 2019 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint.
Plaintiff, who rented an apartment in a building owned by defendants, slipped on a patch of ice on the single exterior step between the sidewalk and a small porch in front of her door. She commenced this action alleging that her fall and resulting injuries were caused by defendants' negligence. Following discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion. Plaintiff appeals.
Initially, plaintiff acknowledges that the parties agreed in a lease that she would be responsible for the removal of snow and ice from the entrance of her apartment to the driveway. Her argument, however, is not that defendants were negligent for failing to remove the snow and ice from her step. Rather, she argues that defendants were negligent in their maintenance of the roof and gutter system, which allowed melting snow and ice to drip onto her step, creating the hazardous condition that precipitated her fall. Although "[i]t is unreasonable to require a landlord to discover ice within two to three hours of its formation on a late weekend evening when there is no precipitation, especially when that ice is not visible to people who were walking upon it" (Boucher v Watervliet Shores Assoc., 24 AD3d 855, 857 [2005]), plaintiff contends that the condition that led to the formation of the ice patch was present and ascertainable for at least several days.
"As a general rule, an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant. Exceptions to this rule include situations where the landlord retains control of the premises, has specifically contracted to repair or maintain the property, has through a course of conduct assumed a responsibility to maintain or repair the property or has affirmatively created a dangerous condition" (Davison v Wiggand, 247 AD2d 700, 701 [1998] [citations omitted]; accord Rose v Kozak, 175 AD3d 1656, 1657 [2019]; Pomeroy v Gelber, 117 AD3d 1161, 1162 [2014]). However, "a landlord has a duty to use ordinary care to keep those areas which are reserved and intended for the common use of the tenants and owner of the building and subject to the landlord's control, i.e., the common areas, in a reasonably safe and suitable condition" (Wynn v T.R.I.P. Redevelopment Assoc., 296 AD2d 176, 179 [2002] [internal quotation marks and citation omitted]; see Murphy v Hometown Real Estate, 132 AD3d 1126, 1126-1127 [2015]). " To meet [his or her] burden on the issue of lack of constructive notice, the defendant must offer some evidence as to when the accident site was last . . . inspected prior to the plaintiff's fall" (Mei Xiao Guo v Quong Big Realty Corp., 81 AD3d 610, 611 [2011]). To be awarded summary judgment, defendants were required to establish that none of the above exceptions applied or, if one or more of the exceptions did apply, that they had no actual or constructive knowledge of the hazardous condition. Their submission of deposition testimony and the lease failed to meet their burden.
The roof here was not accessible or available for use by the tenants (compare Harrington v 615 W. Corp., 2 NY2d 476, 480 [1957] [roof contained clotheslines and landlord permitted tenants to use roof for drying clothes]), but the record indicates that the exterior of the building may have been within defendants' control. Since purchasing the building in 1994, defendants had replaced the roof, replaced the gutter system along at least one side of the building and recoated part of the roof with tar. Defendant Timothy J. Charest, who was responsible for managing the property, testified that the gutter system was on the building when defendants purchased the property, but also testified that "if there were problems with a gutter" on the side of the building containing the apartment entrances, "there were repairs made," though he could not remember when any such repairs had been made. Charest testified that he inspected the property approximately weekly, as well as after every storm. He did not keep records of his inspections but would do them on a weekday; plaintiff's accident occurred on a Friday evening. Neither defendant could specifically identify when he had last inspected the property.
Plaintiff testified that on the day of her fall there was no precipitation, the temperature was in the 40s and the step was dry when she left for work at 10:00 a.m. When she returned home at 9:00 p.m., she did not notice any ice, but it was dark out. At 10:00 p.m. she left her apartment, slipped on the step and fell, then noticed a patch of ice on the step. She had seen snow on the roof for five days prior to her fall. An icicle had formed, was hanging from the roof over her step and was getting larger each day for the five days preceding her fall. On prior days when she would return home from work at approximately 5:00 p.m. and the temperature had been in the 40s, she would see the icicle melting but did not notice whether the dripping water froze because she did not go out again later. A nonparty witness testified that she was at plaintiff's apartment regularly in the days before the fall, the icicle and snow on the roof had been there for a few days prior to the fall, she arrived at the apartment a few hours after plaintiff's fall, the ice patch on the step was directly beneath the icicle and she had seen melting and water pooling on the step in the three days preceding the fall. The witness testified that when the icicle began to form, the icicle would come down further during the day when it got hotter and would resolidify when it got colder at night.
Viewing the evidence in the light most favorable to plaintiff, as the nonmoving party (see McNally v Kiki, Inc., 92 AD3d 1105, 1106 [2012]), defendants did not prove as a matter of law that they were entitled to summary judgment. Factual questions exist, including whether defendants' course of conduct indicated that they retained control of or assumed a responsibility to maintain the premises. Defendants failed to establish definitively that they did not create the condition through any possible repair work on the gutters. A question also exists regarding whether defendants had constructive notice of the condition, as testimony indicated that the condition existed for at least five days and was melting and refreezing throughout that period, and defendants were unclear as to when they had last inspected the property (see Mei Xiao Guo v Quong Big Realty Corp., 81 AD3d at 611; Managault v Rensselaer Polytechnic Inst., 62 AD3d 1196, 1198 [2009]). To the extent that the lease required plaintiff to clear snow and ice from the step, her failure to discover and remove the ice may raise questions regarding her comparative fault but does not absolve defendants of their responsibility to adequately maintain the property. Accordingly, as defendants failed to meet their burden, they were not entitled to summary judgment dismissing the complaint and their motion should have been denied.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion denied.